BILL STOUT *v.* STATE OF ARKANSAS

5509                                                    458 S. W. 2d 42

Opinion delivered September 28, 1970

*Harold C. Rains, Jr.,* for appellant.

*Joe Purcell,* Attorney General; *Mike Wilson,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Bill Stout, brings this appeal from a conviction on charges of burglary and grand larceny. For reversal, eight points are asserted, but the first five all deal with whether the testimony was sufficient to support the convictions; more particularly, it is contended that the evidence corroborating the testimony of the alleged accomplice was insufficient to sustain the charges.

Jerry Thomas, a nephew by marriage of appellant, testified in detail how he and Stout burglarized the Ransom Grocery. Appellant and his wife lived approximately thirty yards from the store, renting these premises from the owner of the grocery, Mrs. W. H. (Stacy) Ransom. Thomas testified that he and his father were visiting Stout and his wife on August 25, 1969; that sometime past midnight, after quite a bit of drinking, Stout suggested (and the witness agreed), breaking into the Ransom grocery store. Stout threw a brick through the store window, and he (Thomas) then went into the building, and handed various items to Stout, including shirts, candy, a box of chewing gum, a number of cartons of cigarettes, and $2.00 in cash. The witness said that they returned to the Stout residence and subsequently hauled the articles that they had taken to the home of a friend in a truck. The next day the two, using Stout's blue 1962 Ford station wagon, picked up some of the merchandise for the purpose of selling it in Ft. Smith. Thomas said that they sold a number of cartons of cigarettes, selling them both by the package and by the carton. He related that the appellant sold about 35 cartons, and he said that, after selling the cigarettes, he and Stout had about $30.00 each. The two were subsequently arrested by Sheriff Bill Vickery

and Deputy Sheriff Frank Neal. Thomas then directed the sheriff to the location of the balance of the stolen merchandise, and the witness identified the shirts in court.

Other proof reflected that Stout rented and lived in the house near the Ransom grocery, and that a brick had been used to break the window as testified to by Thomas. Stacy Ransom stated that between 50 and 60 cartons of cigarettes, shirts, and other merchandise had been taken. She also identified the shirts as having been part of the property, likewise some shoe laces, and a carton of cigarettes which had been recovered and was stamped "Ransom's Grocery". She said the cartons of cigarettes were of the value of at least $3.00 a carton and that part of the shirts were $3.98 each and part $2.98 each.

Sheriff Vickery testified that he received information that the occupants of a blue Ford station wagon with license number AMJ 680 were selling cigarettes, and after making a license check, he ascertained the license had been issued to a Mr. G. L. Stringer. He learned that Stout was purchasing this station wagon from Stringer. During the investigation of the burglary the sheriff said that he saw this particular station wagon parked at the Stout house, along with a Ford pick-up truck. Four packages of cigarettes, representing four different brands, were found in the truck. The sheriff further stated that Leroy Williams, who had purchased some of the alleged stolen cigarettes, identified Stout as the seller.[1]

Officer George W. Willis of the Ft. Smith Police Department, testified that he received the report of the Ransom burglary, and during the course of his investigation, found that merchandise bearing the stamp of the Ransom Grocery was being sold by two persons who were driving a blue Ford station wagon with the license number AMJ 680.

---

[1]There was no objection to this testimony.

Leroy Williams, Jr., testified that he bought cigarettes from two white men who were operating a blue station wagon. He said that he bought nearly three cartons, paying close to $3.00, and he identified one of the cartons. On cross examination, Williams testified that the cartons that he purchased were "opened", while those exhibited to him were not opened, and he said he didn't know whether Stout and Thomas were the same men who sold the cigarettes to him. However, previous to this last statement, and also on cross examination, the record reveals the following testimony:

"Q. Who did you buy your cigarettes from?

A. From two white fellows.

Q. Did you ever see them before?

A. No, Sir, I never did.

Q. And you haven't seen them since?

A. Yes, Sir, I have seen them since.

Q. It was in this Court Room is that correct?

A. It was in the court house."

Williams stated that he turned over the three cartons of cigarettes that he had purchased to Willis.

Appellant did not testify, nor was any relevant evidence offered on his behalf.[2]

The test of sufficiency of corroboration has been stated to be whether, if the testimony of the accomplice is eliminated from the case, the rest of the testimony and evidence is sufficient to establish the commission

---

[2]John Ames, a police officer, testified on behalf of the defendant, that about 3:30 P.M. on the day following the burglary, he had arrested Stout and his wife for being drunk. This occurred some two hours after Stout was allowed to leave the sheriff's office following preliminary interrogation relative to the burglary.

of the offense and the connection of the accused therewith. *Froman* v. *State,* 232 Ark. 697, 339 S. W. 2d, 601. In *Beasley* v. *State,* 219 Ark. 452, 242 S. W. 2d. 961. quoting from an earlier case, we said:

"The rule in this state is that the corroborating evidence need only tend to connect the defendant with the commission of the offense, and not that such evidence of itself be sufficient, and where there is sufficient evidence tending to connect the defendant with the offense, its sufficiency is a question for the jury, together with that of the accomplice."

Appellant complains that the testimony of Willis, connecting Stout with the offense, was based on knowledge gained from other persons, and was thus hearsay evidence. A sufficient answer to this statement is that no objection was made to the testimony of Officer Willis relating to the sale of the cigarettes. Appellant also refers to the testimony of Williams, and says that Williams could not identify appellant, and that that witness also stated that the cartons he purchased had been opened, while those exhibited to the witness at the trial were not opened. We have already commented that the testimony of Williams is somewhat in conflict. As for the fact that the cartons were not opened, Vickery testified that the cartons had been opened but that he closed and taped them in order to hold the cartons together. The total evidence mentioned was ample to present a jury question as to the guilt of Stout.

Appellant says that Mr. Stringer could have been subpoenaed by the state for the purpose of identifying the station wagon and its whereabouts at the time of of the burglary, as well as the persons to whose home the stolen merchandise had been taken. As already stated, the state's evidence was sufficient to connect Stout with the burglary without this last evidence, and of course, appellant could have subpoenaed these same witnesses to testify in his behalf, had he desired to do so.

It is asserted that the state failed to prove that the value of the goods stolen was in excess of $35.00. We do not agree. Mrs. Ransom testified to the value of the articles taken from the store, which was far in excess of that amount. Appellant says that the articles identified at the trial as being taken from Ransom's grocery did not reach a value of $35.00, the state offering only four cartons of cigarettes, and the shirts, as property alleged in the Information to have been stolen. It is true that 50 or 60 cartons of cigarettes were not offered into evidence—but under the proof, this could not be done. The evidence reflected that most of the cigarettes had been sold, and could not be recovered. There is, of course, no requirement that all alleged stolen property must be exhibited before a conviction can be obtained. In a great number of instances, stolen property cannot be recovered, and of course, it is almost impossible to identify money taken in a mercantile burglary. The testimony of Mrs. Ransom was sufficient on this point.

Complaint is made that the state was allowed to offer in evidence various items of property which it asserted were taken from the grocery, these items however not being included in the Information filed against Stout. We need only point out that when this objection was made, the court instructed the jury to disregard testimony relative to any item supposedly taken from the grocery store except items which were mentioned in the Information.

Finally, it is asserted that the punishment fixed by the jury on the grand larceny charge was excessive. The jury fixed the appellant's punishment at three years on the burglary charge and twelve years confinement on the grand larceny charge. Appellant says that the grand larceny penalty constituted cruel, unusual, and excessive punishment and could only have been rendered as a result of passion and prejudice on the part of the jury; that "the crime alleged to have been committed herein was very ordinary and routine and certainly did not call for a sentence of this character or length".

In *Blake* v. *State,* 244 Ark. 37, 423 S. W. 2d, 544, we stated that it is within the power of the legislature to classify crimes and to determine punishment, and that after such punishment is so fixed, until it is declared unconstitutional, no sentence under it can be regarded as cruel and unusual. In the present instance, we certainly do not find the punishment to be cruel and unusual. It does not exceed the statutory limit; in fact, the statute authorizes a penalty of up to 21 years imprisonment in the state penitentiary[3] for this particular offense.

On the whole case, we find no prejudicial, nor reversible error.

Affirmed.

---

[3]Ark. Stat. Ann. § 41-3907 (Repl. 1964)