Raymond OLLES and Richard ANDERSON
*v.* STATE of Arkansas

CR 76-130                                    542 S.W. 2d 755

Opinion delivered November 8, 1976

*Harold L. Hall,* Public Defender, by: *John W. Achor,* Chief Dep. Public Defender, for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Terry Kirkpatrick,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellants were convicted of burglary of the residence of Jimmy "Red" Jones in Perry County and of grand larceny of property taken from that house. Appellants contend that there was insufficient evidence to support the verdict of guilt, and we agree, insofar as Raymond Olles is concerned. We find sufficient evidence as to Anderson's guilt.

The testimony of Sue Markham, a participant in the crimes, would support the verdict, if this were sufficient. The testimony of an accomplice must be corroborated by other evidence tending to connect the defendant with the commission of the offense and it is not sufficient to show that the offense was committed and the circumstances of the offense. Ark. Stat. Ann. § 43-2116 (Repl. 1964). The corroborating evidence must be sufficient to establish the commission of the offense and the connection of the accused therewith if the testimony of the accomplice is eliminated from the case. *Prather v. State,* 256 Ark. 581, 509 S.W. 2d 309. The evidence connecting the accused with the crime must be independent of the testimony of the accomplice. *Anderson v. State,* 256 Ark. 912, 511 S.W. 2d 151; *Jackson v. State,* 256 Ark. 406, 507 S.W. 2d 705. It may be circumstantial, but it must be substantial. *Jones v. State,* 254 Ark. 769, 496 S.W. 2d 423. Even though it need only tend to connect the accused with the crime, it must do more than raise a suspicion of guilt. *Prather v. State,* supra. It need not be sufficient, in and of itself, to sustain a conviction and it may be slight and not altogether satisfactory and convincing, if substantial. *Klimas v. State,* 259 Ark. 301, 534 S.W. 2d 202. It must, however, be of a substantive character (*Yates v. State,* 182 Ark. 179, 31 S.W. 2d 295), i.e., it must be directed toward proving a fact in issue, not simply toward discrediting a witness or corroborating his testimony. Black's

Law Dictionary, 4th Ed.; *Zimmerman* v. *Superior Court,* 98 Ariz. 85, 402 P. 2d 212, 18 ALR 3d 909 (1965). See also, *State* v. *Fitch,* 162 S.W. 2d 327 (Mo. App., 1942); *Kitchen* v. *Commonwealth,* 291 Ky. 756, 165 S.W. 2d 547 (1942); *Foster* v. *Copeland,* 27 Tenn. App. 777, 159 S.W. 2d 96 (1942).

When we eliminate the testimony of Sue Markham, the other evidence clearly shows that a burglary and a theft amounting to grand larceny were committed. The evidence connecting appellant Olles with the crime does no more than raise a suspicion of guilt. As to Anderson, the only independent evidence to connect him with the crime is a statement he made to an officer and his own testimony. But the acts, conduct and declarations of the accused before or after the crime, including his testimony at the trial may furnish the necessary corroboration. *Long* v. *State,* 192 Ark. 1089, 97 S.W. 2d 67; *Stroud* v. *State,* 167 Ark. 502, 268 S.W. 850; *Mallett* v. *State,* 165 Ark. 613, 263 S.W. 384; *Ford* v. *State,* 205 Ark. 706, 170 S.W. 2d 671; *Dickson* v. *State,* 197 Ark. 1161, 127 S.W. 2d 126; *Russell* v. *State,* 97 Ark. 92, 133 S.W. 188.

Perry County Deputy Sheriff Clyde Booher testified that when he asked Anderson if he helped burglarize Jones' home, Anderson answered, "I don't know. I guess so. I was drinking at the time." Anderson testified at the trial that he was so drunk he remembered nothing from the time he got into the back seat of an automobile with Sue Markham and Raymond Olles on the evening of the burglary and until he "awoke" when they were near the Arkansas River and Sue was cooking some eggs. Booher had testified that Anderson told him that he remembered leaving with Sue and Raymond Olles and being under a building which was "high off the ground" down along the river, and cooking some eggs. The officer went to such a place, not identified, and found eggshells on the ground.

Anderson's wife testified that when she got home from work at 10:30 p.m. on the night of the burglary there was a box of clothes, sheets, pillow cases and towels in the house which had not been there earlier. She said that when Anderson got up the next morning he just told her there was a box of clothes there in the house. Anderson himself testified that he told the officers some sheets "stayed out there" on his

porch. He said he went out the next morning when he sobered up and there was a box of clothes in the yard, folded up in a long, pasteboard box, and there was a little piece of copper wire laying out in the driveway. Mrs. Anderson said that she started using the clothing. The owner testified that the property stolen included certain ladies' garments and a heavy cardboard box 36 inches wide, 24 inches deep and 48 inches long containing approximately 14 sheets, 15 pillow cases and 24 towels.

Sue Markham testified that she, Raymond Olles, with whom she was living, and Richard Anderson, her uncle, had gone to the Jones residence, where Olles and Anderson got out of the car, went to the house and brought back a couple of boxes of "stuff" and put them in the car. She said that Anderson made two or three trips, after which Olles and Anderson got in the car with her and the three went down to the river to a house built up on poles above the ground where they cooked some hamburger meat and boiled two dozen eggs. They then went by Anderson's home where he unloaded a box, after which Olles and Markham went home.

The possession of the stolen property would not be sufficient, standing alone, to corroborate the testimony of the accomplice, because the property at the Anderson house was not sufficiently identified at the trial. See *Scott* v. *State*, 63 Ark. 310, 38 S.W. 339. Still this evidence showing that articles of the type of those stolen mysteriously appeared in Anderson's possession on the night of the burglary, without any explanation except that Anderson claimed to be drunk and ignorant of their source, is certainly a circumstance to be considered in determining whether there is a chain of circumstances making the corroborating evidence sufficient. See *King* v. *State*, 254 Ark. 509, 494 S.W. 2d 476.

The circumstances, coupled with Anderson's own statements putting him in the automobile with Sue Markham and Raymond Olles immediately before the burglary and at the house along the river where eggs were cooked by Sue immediately after the burglary, constituted substantial circumstantial evidence tending to connect Anderson with the crime sufficient to warrant submission of the question to the jury. *Hubbard* v. *State*, 258 Ark. 472, 527 S.W. 2d 608 [and

*State* v. *Bassett,* 86 Idaho 277, 385 P. 2d 246 (1963) therein cited]; *Shaw* v. *State,* 133 Ark. 599, 202 S.W. 704; *Cook* v. *State,* 182 Ark. 1185, 31 S.W. 952; *Middleton* v. *State,* 162 Ark. 530, 258 S.W. 2d 995; *Yates* v. *State,* supra, 182 Ark. 179; *Stout* v. *State,* 249 Ark. 24, 458 S.W. 2d 42. Since the accomplice was corroborated as to particular material facts, the jury could infer that she spoke the truth as to all. *Payne* v. *State,* 246 Ark. 430, 438 S.W. 2d 462.

We are unable to find substantial evidence tending to connect Olles with the crimes. The fact that an officer found eggshells at a house similar to that where Sue Markham said she and Olles had cooked eggs after the burglary cannot be considered as substantive evidence, even though it tends to be corroborative of her testimony. Even if we considered Anderson's testimony as connecting Olles with the crime, the testimony of one accomplice cannot be corroborated by another. *Edmondson* v. *State,* 51 Ark. 115, 10 S.W. 21; *Melton* v. *State,* 43 Ark. 367. Otherwise the only circumstance connecting Olles with the offenses is that some of the merchandise stolen was recovered from the home of Olles and Sue Markham at 3814 Shackleford Road in Little Rock, after he had been arrested on a warrant issued on another charge. Possession of stolen property by the accused is a proper circumstance to consider in determining whether there was evidence tending to connect him with the crimes of burglary and grand larceny. *Klimas* v. *State,* supra, 259 Ark. 301. But the mere fact that several days after Olles had been arrested and incarcerated some of the stolen goods were recovered from the dwelling shared by the accused and Sue Markham, whose participation in the crime was admitted, is not sufficient corroboration, standing alone, even though it certainly would arouse a suspicion. In this respect, there is a similarity to such cases as *Cockrell* v. *State,* 256 Ark. 19, 505 S.W. 2d 204 and *Pitts* v. *State,* 247 Ark. 434, 446 S.W. 2d 222. In Cockrell, we held that the mere fact that stolen guns were found in the trunk of the accused's automobile was, not sufficient corroboration of the testimony of an accomplice who lived with the accused and had free use of the car, especially when the accused was at work.

There is another point for reversal we must consider as to Anderson. He argues that he was incapable of having com-

mitted the crimes because he was so intoxicated at the time that he could not have entertained the specific intent to commit burglary or larceny. He contends that the undisputed evidence clearly establishes this defense. Of course, voluntary intoxication is not a defense, even though it may produce a form of "temporary insanity" or render the person charged unconscious of what he is doing. *Robertson* v. *State,* 212 Ark. 301, 206 S.W. 2d 748; *Wood* v. *State,* 34 Ark. 341. Still, when an offense can be committed only by doing a particular thing with a specific intent, it may be shown that an accused was so drunk at the time of the crime that he could not have entertained or formed the necessary intent, but the determination whether there was that degree of intoxication is solely within the province of the jury. *Stevens* v. *State,* 246 Ark. 1200, 441 S.W. 2d 451.

Undoubtedly, Anderson had been drinking beer in large quantities before and after the crimes. Sue Markham and Anderson's aunt (neither of whom was a medical expert) testified that Anderson had Huntington's Chorea and that one who has this disease does not know or remember what he is doing or has done, after drinking. Markham testified that he "passed out" on the way to Perry County, but that he made two or three trips to the Jones house and that he unloaded a box when she and Olles took him to his home. Even though Anderson testified that he did not know how the box got there, he did tell his wife of the presence of the box and she later used some of the contents. In *Wood* v. *State,* supra, we quoted authorities pointing out that, if one who is too drunk to entertain the specific intent to steal, relinquishes property taken by him before the intent could arise in his mind, there is no larceny. Despite Anderson's protestations that he knew nothing of the crimes, the question of intent was still for the jury's determination.

There remains another point affecting Olles which will arise on a new trial. He contends that evidence obtained by Deputy Sheriff Booher from his residence was erroneously admitted into evidence as the fruit of an illegal search. A motion to suppress this evidence was made and a pretrial hearing was held in camera, but the motion was denied. It is appellant's contention that the search and seizure resulted from an earlier "illegal" entry into Olles' place of residence

by the officer. We find no merit in this contention, because we cannot say that the circuit judge's findings of fact are clearly against the preponderance of the evidence.

Booher testified substantially as follows:

> Olles told me that he lived at 3814 Shackleford Road when I arrested him. I went to the house there with Raymond Olles' father. I don't remember the date but it was after Olles had been arrested on another charge. The senior Olles asked a Mrs. Speigel, the lady who owned the house, about Raymond's gun, saying that he was afraid someone might steal it. She told him the house was open and to go out there and get the gun. I went in the house with him, but I didn't see anything. The place was pretty badly torn up. I had no permission to enter from Raymond Olles or Sue Markham. I just went in there with Raymond's father. He took some jumper cables which were just inside the door on the right, saying they were his. I did not try to stop him. I had no authority there. Mrs. Speigel gave us permission to go in.

> A few days later (November 12) I went back to this residence to talk to Sue Markham, who lived there with Raymond Olles, about the burglary. She and her sister were there and she invited me in. I talked with her for a few minutes, advised her of her rights, told her that she was accused in a burglary, and she signed a statement and gave me permission to search. I asked her about the Jimmy "Red" Jones incident and she said, "I've got some of his stuff here, part of it." She signed papers giving me the authority to search the house, but I did not search it. She gave me the merchandise and I took it back to Perryville. At first, Sue Markham said she didn't know anything about the burglary, but I didn't force her into answering any questions. We had a very cordial conversation. I talked to her at some length. She went into details and it took some time to write it all down. She seemed intelligent enough to me.

Sue Markham testified reluctantly. She was called by the court as a witness. When asked what was said when

Booher talked to her about the Jones burglary, she responded:

> Well, at first I, see, I said I didn't know anything about it, then he said that, "Well, we've been up to Raymond, I and Raymond's daddy have come up here and you wasn't at home and we walked in." He said that his daddy was just looking for the gun and he said, "I know you got the stuff," he said, "but is it all here," and then, I mean, since he already knew, I thought well, I'd return the stuff.

She said Booher had seen the toaster and electric blender while there on the second visit and asked her if they came from the Jones house and she told him, "Yes, sir." She admitted that she had been advised of her rights. On cross-examination by appellants' counsel, the following questions were propounded and answers given:

> Q. - - and it was after Deputy Booher told you that he'd been in your house and he'd seen the stuff there, that he knew it was there, that you told him about it, wasn't it?
>
> A. Yes, sir.
>
> Q. He told you he'd been in there and he told you he knew the stuff was there?
>
> A. Uh huh.

The witness had not previously stated that Booher had seen anything in the house on his prior visit. The witness also testified that she helped dispose of some of the "stolen stuff" and kept some of it in her house, knowing it was stolen.

> The trial court ruled as follows:
>
> *** The Court finds that Deputy Booher, when he went in there the first time, as he has testified to, did not receive anything that would incriminate anyone. He merely went there with the father of the defendant, Olles, who he himself had apparently had a right to be there picking up some of his own goods, and then when

he went back to the premises on the 12th, apparently, he did not make a search of the premises. The witness here, who is available to testify, voluntarily gave him the goods that had been stolen from the victim's home. They are available, I guess, so I find that there was, in fact, no search.

We are in no position to say that the trial judge erred in holding that there was no search and that the stolen goods had been voluntarily delivered to the officer. There is little conflict in the testimony of the two witnesses. The only suggestion that Sue Markham's turning over the stolen property was not voluntary, because of knowledge obtained by a trespass on the part of the deputy sheriff, lies in affirmative answers to questions which put into the mouth of the witness words she had not otherwise spoken. This is largely a matter which turns upon the credibility of the witnesses, who were seen and heard by the trial judge. We cannot say that his determination was erroneous.

The judgment as to Anderson is affirmed. As to Olles, it is reversed and the cause remanded for further proceedings consistent with this opinion.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and JONES, JJ.