Curtis Allen GIPSON *v.* STATE of Arkansas

CR 80-160                                      610 S.W. 2d 261
Supreme Court of Arkansas
Opinion delivered January 19, 1981

*E. Alvin Schay*, State Appellate Defender, by: *Linda Faulkner Boone*, Deputy Appellate Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty.

Gen., for appellee.

DARRELL HICKMAN, Justice. Curtis Allen Gipson was convicted of theft of a 1979 four wheel drive Ford pickup truck and sentenced to six years imprisonment. He was sentenced as an habitual criminal with two prior felony convictions.

On appeal he argues there was insufficient evidence to corroborate the testimony of an accomplice. We find sufficient evidence and affirm his conviction. Gipson and an acquaintance, James Allen Allred, both of whom live at Ola, Arkansas, went to Little Rock on the 14th of February, 1979. Gipson went on business and Allred went along for the ride. They picked up a hitchhiker on their return. The hitchhiker, identified as Steven Hearn, was not a witness at the trial but was admittedly a confidential informant for the authorities in Hot Springs, Arkansas.

Allred pled guilty to theft and testified against Gipson. Since Allred was an accomplice and his testimony must be independently corroborated by other evidence which not only establishes that the crime was committed, but also tends to connect Gipson to that crime. Ark. Stat. Ann. § 43-2116 (Repl. 1977). *Olles* v. *State*, 260 Ark. 571, 542 S.W. 2d 755 (1976).

Allred's story was that the hitchhiker and Gipson agreed that Hearn would steal a truck and deliver it to Gipson for $100.00. They drove through Arkadelphia and Malvern looking for trucks at dealers and ended up in Hot Springs at Resort Ford Company. Allred said Gipson entered the truck with a screwdriver and gave a tool to Hearn which could be used to pull the ignition so the truck could be started. Gipson and Allred left, agreeing to meet Hearn later that evening.

Early the next morning they met Hearn, who was driving the stolen truck, in a remote area. There the police arrested them. Lt. Charles Evans of the Hot Springs Police Department said that he had used Hearn as a confidential informant in drug cases and had received a call from him about two or three o'clock in the afternoon of the 14th of February.

Hearn told Evans about the proposed theft of a truck. Evans instructed Hearn to proceed as planned. Later, at one o'clock in the morning Evans again met with Hearn at the police station. Hearn had the stolen truck and showed the officers a dent-pulling tool he had used to pull the ignition system so that the truck could be driven. Evans marked the tool and instructed Hearn to return it to the man who had given it to him. Hearn related where he was supposed to meet Gipson later and the police notified other law enforcement officers of the place of the meeting. Surveillance by several officers was arranged.

In the early morning hours of the 15th the stolen pickup and a Pontiac car were seen in a remote area near Ola with the truck following the car. After driving around, the two vehicles stopped. Hearn was in the truck. The officers testified that the parties were talking when it was decided to arrest them. The arrest took place at about 5:00 a.m. Evans testified, and his testimony was corroborated by other officers, that the tool brought to him by Hearn and marked at the police station was found in Gipson's vehicle.

A witness for Resort Ford testified that he was informed by the police of the proposed theft beforehand. He identified the truck as his. It was a new 1979 orange and white Ford pickup truck.

Gipson elected to testify against the advice of his attorney. He stated that he did not discuss stealing a truck with Hearn, but it was Allred and the hitchhiker who talked about "a big, big-time business deal, and I wasn't paying all that much attention to them at all, no way." He said Allred told him they were supposed to meet the hitchhiker and "look at" a truck. He said when he first saw the truck and looked it over he knew it was stolen and he "didn't even touch it." He said he was going home when the officers stopped him. Apparently he never explained to the jury's satisfaction why he was meeting Hearn in a remote area at 5:00 a.m. He denied ever being at the Ford dealership, entering the vehicle, or seeing the "pulling" tool.

It is not necessary that the corroborating evidence prove

the guilt of the accused beyond a reasonable doubt. It must simply establish that a crime was committed and tend to connect the accused with that crime. Here, a truck was stolen and the owner testified to that fact. A tool, delivered in advance to the police and marked by them, was found in Gipson's car. Gipson was on top of Ola Mountain, a remote area of Yell County, at 5:00 a.m. He was talking to a man in the stolen truck and Gipson admitted that he had already suspected that the truck was stolen. Obviously the evidence tends to connect Gipson to the theft and this, along with the testimony of the accomplice, was sufficient for the jury to find him guilty.

Gipson's own testimony, no doubt, was not helpful. He admitted that he agreed to meet a stranger at 5:00 a.m. in a secluded place to discuss buying a pickup truck. Those are not the normal circumstances surrounding the sale of any pickup truck — much less a brand new orange and white four wheel drive truck. The tool and all the circumstances of the clandestine meeting tend to connect Gipson to the theft.

Affirmed.