Phillip Dewayne WILLIAMS *v.* STATE of Arkansas

CR 01-1170 91 S.W.3d 54

Supreme Court of Arkansas
Opinion delivered December 5, 2002

[Petition for rehearing denied January 9, 2003.]

*Henry & Cullen, L.L.P.*, by: *Tim Cullen*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

W. H. "DUB" ARNOLD, Chief Justice. Appellant, Phillip Dewayne Williams, was charged with one count of capital-felony murder, two counts of aggravated robbery, and one count of misdemeanor theft of property. A Pulaski County jury convicted him on all counts, and the trial court sentenced him to life imprisonment without parole for capital murder, and twenty-year terms of imprisonment on each of the aggravated robbery convictions. His sentence for misdemeanor theft of property merged into his felony conviction sentences pursuant to Ark. Code Ann. § 5-4-404(c)(1) (Supp. 2001).

On appeal, appellant contends that the trial court erred by denying his motions for directed verdict, challenging the court's finding of substantial evidence to support the judgment on each

count. Additionally, appellant challenges the constitutionality of Arkansas's substantial-evidence standard of review and the constitutionality of Rule 5-2(d) of the Rules of the Supreme Court, which denies him the opportunity to cite favorable precedent from unpublished decisions of the Arkansas Court of Appeals. We affirm.

## I. Motions for Directed Verdict

A motion for directed verdict is a challenge to the sufficiency of the evidence. *See, e.g., Tester v. State*, 342 Ark. 549, 30 S.W.3d 99 (2000). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion. *Id.* Circumstantial evidence is substantial when it excludes every reasonable hypothesis consistent with innocence, and whether it does is a question for the jury. *See Gregory v. State*, 341 Ark. 243, 15 S.W.3d 690 (2000). In a challenge to the sufficiency of the evidence, the appellate court reviews the evidence in the light most favorable to the State. *Id.*

Appellant contends that the trial court erred by denying his motions for directed verdict, challenging the court's finding of substantial evidence to support the judgment on each count. We disagree. The facts adduced at trial are as follows: on August 2, 2000, LaShun Henderson was on the porch of his home at 3214 Martin Luther King Drive in Little Rock. He was talking with Kevin Williams, his brother Derrick, and his first cousin, Eldrick Williams. As Eldrick left to wash dishes and the others started to go inside, a car pulled up in the alley beside the house. LaShun Henderson testified that, shortly thereafter, two men came into the house "yelling and shouting" and "pointing their guns in our face[s]." According to Henderson, the men ordered him to take off his clothes and lie on the floor, and one of them demanded money. One of the men, who was wearing a blue shirt, took money that Derrick had lying on a dresser. After taking the money, the men began to leave the house.

The men ran into Eldrick on the porch as they were leaving, and, at that point, Mr. Henderson heard gunshots. The appellant, who was wearing red and black, shot Eldrick. There were, according to testimony, "numerous gunshots," including one fired by the appellant's accomplice back into the room. According to Mr. Henderson, Eldrick did not have a gun.

Barbara Henderson, Eldrick Williams's aunt, also testified. She stated that she was upstairs in the house on August 2, 2000, when her nephew came and told her that there were two men downstairs with guns. Ms. Henderson testified that she heard a gunshot as she made her way down the stairs, and when she could see the porch, she saw two men with Eldrick. She stated that Eldrick "couldn't control [him]self"; he was "falling down," and she saw one of the men — the one who was wearing red — standing over him and shooting at him three or four times. Ms. Henderson also testified that Eldrick did not have a gun.

The appellant's accomplice, Kareem Holloway, also testified for the State. Mr. Holloway stated that, on August 2, 2000, he was sleeping at his girlfriend's house when the appellant arrived. They decided to go buy a sack of marijuana, and the appellant drove Mr. Holloway and two other friends to the house on Martin Luther King Drive in Little Rock. When they arrived at the house, the appellant got out of the car and began talking to three or four young men. Soon afterward, Mr. Holloway decided that he wanted to buy his own sack of marijuana and approached the house. He began talking to Kevin Williams in the doorway, while the appellant talked with Derrick Williams beside a bed in the interior of the house. Mr. Holloway subsequently followed Kevin into the house, where he saw $500.00 on a dresser. After putting the money in his pocket and turning back around, Mr. Holloway saw LaShun Henderson waving a gun, whereupon he, the appellant, and Derrick Williams all drew their weapons.

After drawing their weapons, Mr. Holloway and the appellant began to walk backwards out of the house. As they were leaving, Eldrick Williams ran in the house through the back door, ran out, and then ran back into the house, whereupon the appellant "turned around and shot him." According to Mr. Holloway,

the appellant, rather than walking around Eldrick after he shot him, "turned around and grabbed him in a headlock and . . . started shooting him in the head." He estimated that the appellant shot Eldrick "about seven times." Mr. Holloway testified that he and the appellant were armed with a .38 revolver and a 9-millimeter handgun, respectively, but that Eldrick did not have a gun. After the shooting, Mr. Holloway and the appellant left the house on Martin Luther King Drive, separated briefly, and then met in North Little Rock, where they exchanged the money and marijuana that they had taken from the house.

Scientific testimony indicated that Eldrick died as a result of several gunshot wounds fired at close range. James Looney, an expert in tool marks and firearms from the Arkansas State Crime Laboratory, testified that several projectiles recovered from the scene, including one that was recovered from Eldrick's body, were all fired from the same 9-millimeter weapon. Jeff Taylor, a trace-evidence expert from the laboratory, added that gunpowder residue on Eldrick's clothing and on the hair surrounding his head wound indicated that he was shot at close range. Dr. Stephen Erickson, the forensic pathologist who performed the autopsy, testified that Eldrick sustained six gunshot wounds of varying kinds and severity. One of the bullets entered his left hip and broke his femur, which could have caused him to collapse to his knees. Other bullets caused wounds to his left bicep, the top of his left shoulder, and his left thumb, while two wounds, one to his head and one at the base of his neck, could have been fatal. According to Dr. Erickson, the head wound could have occurred while Eldrick was held in a headlock and shot at close range.

The appellant also testified on his own behalf at trial. He stated that he went to the house on Martin Luther King Drive to buy marijuana. He entered the house with Derrick Williams, Kevin Williams, and LaShun Henderson. Mr. Holloway unexpectedly followed them into the house and, as the appellant examined bags of marijuana, he heard shouting that caused him to turn around. He saw Mr. Holloway standing with his gun and money in his hands. LaShun Henderson then pulled a gun out from underneath a bed, provoking the appellant to pull his gun out of the waistband of his pants. The appellant testified that he

was trying to back out of the house when Eldrick entered the room, looked at the men holding guns, and ran back out. By that time, Derrick was also pointing a gun. As the appellant continued to attempt to back out of the room, he ran into Eldrick, who was hollering and rushing toward him. The appellant testified that he believed that Eldrick had run to get a gun, and, with Derrick also shooting at him by that time, shot the floor near Eldrick and told him to stop. When Eldrick did not stop, he shot at him a second time from a distance of about five or six feet. According to the appellant, he did not know of any plan to take money, and he only shot at Eldrick because he believed that he had a gun, and, as a result, feared for his own life.

Appellant first contends that the trial court erred by denying his motion for a directed verdict on the charge of capital murder because there was insufficient evidence that he was an accomplice to either of the aggravated robberies and, because he shot Eldrick only in self-defense, that there was insufficient evidence that he acted with extreme indifference to the value of human life. He also appears to assert that the capital murder charge must fail because there is no conclusive evidence that his gun fired the fatal bullets. Furthermore, regarding the aggravated robbery of LaShun Henderson, the appellant contends that insufficient evidence supports that conviction because there was no proof that anything was taken from him. Regarding the aggravated robbery of Derrick Williams, he argues that there was no evidence that he knew of Mr. Holloway's plan to take the money belonging to Mr. Williams, and that Mr. Holloway's claim that they split the proceeds afterwards is uncorroborated accomplice testimony. He also contends that LaShun Henderson's testimony, which independently establishes the elements of aggravated robbery, should be disregarded on review because it is largely uncorroborated and, therefore, "clearly unbelievable."

As an initial matter, this Court will not dismiss LaShun Henderson's testimony as "clearly unbelievable." The weighing of evidence lies within the province of the jury, and this Court is bound by its determination regarding the credibility of witnesses. *See, e.g. Harmon v. State*, 340 Ark. 18, 8 S.W.3d 472 (2000). The jury is free to believe all or part of a witness's testi-

mony, and inconsistent testimony does not render proof insufficient as a matter of law. *Id.* Indeed, after a jury has given credence to a witness's testimony, this Court does not disregard it unless it was "so inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon." *Kitchen v. State*, 271 Ark. 1, 607 S.W.2d 345 (1980). One eyewitness's testimony, moreover, is sufficient to sustain a conviction, *e.g., Harmon*, 340 Ark. at 25, 8 S.W.3d at 476, and his testimony is not "clearly unbelievable" simply because it is uncorroborated or because it has been impeached. *See Kitchen*, 271 Ark. at 19, 607 S.W.2d at 356. Thus, because the appellant only argues that Mr. Henderson's testimony is unbelievable because it is uncorroborated and inconsistent with Kareem Holloway's testimony, we decline his invitation to disregard it with respect to the convictions at issue.

### A. Capital Murder

Appellant claims the trial court erred by denying his motion for a directed verdict on the charge of capital-felony murder. Appellant maintains that the State failed to produce sufficient evidence to support either charge of aggravated robbery levied against him and that, therefore, the capital-murder charge must fail. Appellant further claims that he did not act with extreme indifference to the value of human life because his actions were in self-defense and that, therefore, the mens rea necessary to sustain a capital-felony murder conviction was not present and was not proved by the State. Appellant's argument fails for several reasons.

First, there was sufficient evidence that appellant was an accomplice to the underlying felony of aggravated robbery. Arkansas Code Annotated § 5-10-101(a)(1) (Repl. 1997) provides that "a person commits capital murder if, acting alone or with one or more other persons, he commits or attempts to commit . . . robbery . . . and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life." Additionally, a person is an accomplice of another in the commission of an offense if, "with the purpose of promoting or facilitating the commission of

the offense, he aids, agrees to aid, or attempts to aid the other person in committing it." Ark. Code Ann. § 5-2-403(a)(2) (Repl. 1997).

This Court has held that factors that connect an accomplice with a crime include presence in the proximity of a crime, opportunity, and association with a person involved in the crime in a manner suggestive of joint participation. *See, e.g., Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996), *cert. denied*, 519 U.S. 898 (1996). In accordance with these standards, the evidence established that the appellant was an accomplice to aggravated robbery. LaShun Henderson testified that the appellant and another man came into a room where he and Derrick Williams were standing, pointed their guns, ordered him to strip and lie on the floor, and demanded money. The appellant also shot Eldrick Williams in an apparent effort to facilitate their escape. Because the forgoing evidence demonstrates that appellant actively participated in the aggravated robberies, we affirm on this point.

Moreover, the State introduced sufficient evidence that the appellant acted with extreme indifference to the value of human life and that his gun fired the fatal shots. The requirement of extreme indifference involves actions that evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim. *McCoy v. State*, 347 Ark. 913, 69 S.W.3d 430 (2002). Eldrick Williams was unarmed; everyone who testified agreed that he was unarmed, including appellant's accomplice, Kareem Holloway. Ms. Henderson testified that she saw the appellant stand over Eldrick's fallen body and shoot three or four times, and Kareem Holloway testified that the appellant held Eldrick in a headlock and shot him in the head. The scientific evidence, indicating that the head wound was inflicted at close range, corroborates that testimony. Additionally, testimony was adduced that the appellant fired a 9-millimeter handgun, and a 9-millimeter projectile was recovered from Eldrick's body. Thus, because the foregoing evidence demonstrates that the appellant acted with extreme indifference to the value of Eldrick Williams's life and that appellant's gun fired the fatal shots, we affirm the trial court's denial of appellant's motion for directed verdict in regard to the charge of capital murder.

### B. Aggravated Robbery of LaShun Henderson

Additionally, the trial court did not err by denying the motion for directed verdict on the aggravated robbery charge regarding LaShun Henderson. Arkansas Code Annotated § 5-12-102(a) (Repl. 1997) states that "[a] person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another." Arkansas Code Annotated § 5-12-103(a)(1) (Repl. 1997) states that "[a] person commits aggravated robbery when he is armed with a deadly weapon, or he represents by word or conduct that he is so armed." It is well settled, and consistent with this statutory language, that no transfer of property needs to take place to complete the offense. *See Robinson v. State*, 303 Ark. 351, 797 S.W.2d 425 (1990). Rather, the focus of aggravated robbery is the threat of harm to the victim; and, consequently, the offense is complete when physical force is threatened. *Id.* LaShun Henderson testified that the appellant and another man came into his house, pointed their guns, ordered him to strip and lie on the floor, and demanded money. We, therefore, hold that the foregoing constitutes substantial evidence of aggravated robbery, regardless of whether property belonging to Mr. Henderson was taken.

### C. Aggravated Robbery of Derrick Williams

Likewise, substantial evidence supports the appellant's conviction for the aggravated robbery of Derrick Williams. Appellant's accomplice, Kareem Holloway, testified that he and appellant divided the proceeds of the robberies upon meeting back up after the robberies/murder. Appellant argues that the testimony of his accomplice, alone, is insufficient to sustain a conviction for this charge and that it requires corroboration. By arguing that Kareem Holloway's testimony about the division of proceeds requires corroboration, the appellant once again overlooks that, for aggravated robbery, a transfer of property does not need to take place, and the offense is complete when physical force is threatened. *See Robinson v. State, supra.* Therefore, the State did not need to corroborate Mr. Holloway's testimony about the divi-

sion of proceeds to prove the aggravated-robbery charge involving Derrick Williams. Rather, the State proved the appellant's guilt with LaShun Henderson's testimony, which established that the appellant and another man came into the room where he and Derrick Williams were standing, pointed guns and demanded money, and that Mr. Williams, who was standing by the dresser where the money was laying, "did what he was told." Based on the foregoing, we affirm the trial court on this point, as well.

### D. Misdemeanor Theft of Property Conviction

The appellant next contends that, because Kareem Holloway's testimony about the division of proceeds is uncorroborated, the State failed to prove the charge of misdemeanor theft of property. We disagree.

██ A person commits theft of property when he knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof. Ark. Code Ann. § 5-36-103(a)(2) (Repl. 1997). Theft of property is a misdemeanor if the property is valued at less than $500.00. Ark. Code Ann. § 5-36-103(b)(3) (Repl. 1997). Moreover, corroboration of the testimony of an accomplice is not required for a misdemeanor conviction. See Ark. Code Ann. § 16-89-111(e)(1) (1987); see also Sanders v. State, 259 Ark. 329, 532 S.W.2d 752 (1976)(any error in failing to instruct the jury as to accomplice liability would be harmless because appellant was ultimately convicted of a misdemeanor). In this case, LaShun Henderson's testimony established that the appellant participated in the aggravated robbery of Derrick Williams; and Kareem Holloway testified that, after the robbery, he gave the appellant some of the money that was taken. Mr. Holloway's uncorroborated testimony is sufficient to sustain the appellant's conviction for misdemeanor theft of property.

### II. Constitutionality of Substantial-Evidence Standard of Review

The appellant next appears to contend that the oft-repeated standard of appellate review for sufficiency of the evidence, the substantial-evidence standard, is unconstitutional under Jackson v.

*Virginia*, 443 U.S. 307 (1979). While his argument is not entirely clear, he seems to assert that this Court erroneously concluded in *Jones v. State*, 269 Ark. 119, 598 S.W.2d 748 (1980), that the substantial-evidence standard is consistent with the "rational fact-finder" standard enunciated in *Jackson*, and that his case, if affirmed on the allegedly scant evidence in the record, illustrates that the substantial-evidence standard does not adequately insure that the jury found he was guilty beyond a reasonable doubt. We must assume, then, that appellant is urging this Court to overrule *Jones* and explicitly adopt the rational fact-finder standard and that, under that purportedly more demanding standard of review, to hold that insufficient evidence supports his convictions for aggravated robbery. For the following reasons, we decline appellant's apparent invitation to overrule *Jones*, and we affirm appellant's conviction.

 This Court actually held in *Jones* that the substantial-evidence standard is consistent with the rational fact-finder standard enunciated in *Jackson*. In *Jackson*, the United States Supreme Court rejected a standard of review that required only an examination of whether there was *any* evidence to support a conviction in favor of a standard which, instead, insured that the fact-finder rationally applied the standard of "guilt beyond a reasonable doubt," or, in other words, that the evidence of guilt was convincing to a point that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 317, 318-19. The substantial-evidence standard, while not explicitly reciting the standard from *Jackson* word for word, requires that evidence supporting a conviction must compel reasonable minds to a conclusion, *see, e.g. Rutledge v. State*, 345 Ark. 243, 45 S.W.3d 825 (2001), and force or induce the mind to pass beyond suspicion or conjecture, *see Jones*, 269 Ark. at 120, 598 S.W.2d at 749, and, thereby, ensures that the evidence was convincing to a point that any rational fact-finder could have found guilt beyond a reasonable doubt.

 This Court recently reaffirmed *Jones*, and, moreover, again declined to explicitly adopt the rational fact-finder test. *See Hale v. State*, 343 Ark. 62, 31 S.W.3d 850 (2000). In short, because the Court's standard of review is correct, and, because

substantial evidence supports the appellant's convictions, we affirm.

### III. Constitutionality of Ark. Sup. Ct. R. 5-2(d) (2002)

The appellant next contends that Arkansas Supreme Court Rule 5-2(d) (2002), which provides that unpublished opinions by the Arkansas Court of Appeals shall not be cited in any argument in any court, is unconstitutional.[1] Specifically, he relies upon *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000), *vacated as moot*, 235 F.3d 1054 (2000), and apparently asserts that the rule, like its federal analogue that was invalidated in *Anastasoff*, allows this Court to ignore its own precedent, and therefore, exceed its judicial power. The State contends that because the appellant does not suffer any injury as a result of his inability to rely on unpublished Court of Appeal's opinions here, he lacks standing to challenge the constitutionality of Rule 5-2(d) and that this Court should, therefore, affirm. We agree.

 A litigant has standing to challenge the constitutionality of a court rule if the rule is unconstitutional as applied to that particular litigant. *See, e.g., Ross v. State*, 347 Ark. 334, 64 S.W.3d 272 (2002). The general rule is that one must have suffered injury or belong to a class that is prejudiced in order to have standing to challenge the validity of a rule. *Id.* Stated differently, litigants must show that the questioned rule has a prejudicial impact on them. *Id.* Under these standards, the appellant in this case lacks standing to challenge the constitutionality of Rule 5-2(d).

 In *Anastasoff*, the Eighth Circuit held that its rule regarding the precedential value of unpublished opinions was unconstitutional because it allowed that court to ignore its own precedent, and therefore, exceed the judicial power that it had been granted under Article III of the United States Constitution. *See Anastasoff*, 223 F.3d at 903, 905. In contrast to the appellant in *Anastasoff*, however, the appellant here does not seek to rely on an

---

[1] The constitutionality of Rule 5-2(d) is currently the subject of separate litigation in *Weatherford v. State*, CACR 02-415.

unpublished decision of *this* Court, which, if published, would bind the Court and control the outcome of the appeal. Rather, he wants to rely on opinions of the Arkansas Court of Appeals, which, even if published, do not have any binding effect on this Court. *Cf.* Amendment 80 § 5 (providing that Court of Appeals is subject to the general superintending control of the Supreme Court); *cf. also, Box v. State*, 348 Ark. 116, 71 S.W.3d 552 (2002) (noting that Court of Appeals lacks authority to overrule Supreme Court precedents). Therefore, as appellant does not belong to the class of persons who wish to rely on decisions that would otherwise be binding and that would be injured by the application of Rule 5-2(d), we hold that he does not have standing to challenge the constitutionality of this Rule.

### IV. Rule 4-3(h) Compliance

The record has been reviewed for prejudicial error pursuant to Ark. Sup. Ct. R. 4-3(h), and no reversible errors were found.

Affirmed.