Cite as 2019 Ark. App. 455

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CR–19–262

| | |
|---|---|
| ASHTON CLARK<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** October 16, 2019<br><br>APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, OSCEOLA DISTRICT<br>[NO. 47OCR-16-257]<br><br>HONORABLE RALPH WILSON, JR., JUDGE<br><br>REVERSED AND DISMISSED |

## BRANDON J. HARRISON, Judge

In 2018, a Mississippi County jury convicted Ashton Clark of first-degree murder and aggravated robbery. The State's theory of the case was that Clark and three codefendants attempted to rob John Williams, who was shot and killed in the process. As his first point on appeal, Clark argues that his convictions should be reversed because the State failed to corroborate the accomplice testimony of Harold Weeden. We agree. Because the State lacks enough corroborating evidence to support Clark's convictions, we must reverse and dismiss.

## I. *The State Did Not Meet Its Burden of Proof*

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Williams v. State*, 351 Ark. 215, 91 S.W.3d 54 (2002). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial when it can compel a conclusion. *Id.*

Circumstantial evidence, in particular, is substantial when it excludes every reasonable hypothesis consistent with innocence; whether it does so is usually a jury question. *Id.* When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State. *Id.* Having stated the standard of review, we now apply it.

Clark contends the circuit court erred by denying his motions for directed verdict. During the trial, Clark argued that "[t]here's zero evidence that there was a robbery committed outside of the accomplice's testimony." He also argued that Zaria Coleman's testimony was insufficient corroboration under Ark. Code Ann. § 16-89-111 (Supp. 2017). In Clark's view, Coleman's testimony put him "at least an hour, if not more, before this robbery happened or murder happened. So that doesn't even put him close in time to where it happened—to the crime." Clark renewed his challenge to the sufficiency of the evidence against him at the appropriate times. Given Clark's motions, we must delve into the facts presented at trial.

Zaria Coleman was gambling on Broadway Street in Osceola the day John Williams was shot and killed. Harold Weeden was with Coleman the day the shooting occurred. Weeden and Coleman were shooting dice when Zebarius Hawkins walked up in the middle of the game and whispered in Weeden's ear. Weeden got up and left the game. Shakur Bingham, who is Coleman's uncle, was there, too. Coleman said she became concerned because Hawkins "had just robbed one of [her] friends the week before." She told the jury that the three men "pulled across the street and picked up the next person," whom she identified as the defendant, Ashton Clark.

According to Coleman, it was still light outside when she saw Clark leave with the other three men. Approximately an hour and a half later Coleman received a telephone call informing her that Williams had been killed. (She also said it could have been less than an hour later that she received the call.) On cross-examination, Coleman said that the men left the dice game about 5:00 or 5:30 p.m. She confirmed that she later saw Clark and Bingham walking near the homicide scene where a crowd of people had gathered. On redirect, Coleman said that when she saw the men leaving the dice game they were riding in "Harold [Weeden] momma truck," which was a "little four-door truck" or "SUV" that "had a sign on the side of it."

Major David Scrivener of the Osceola Police Department testified that he was called the night John Williams was killed to help with "crowd control." While at the scene, Scrivener saw several video cameras that surveilled the area. Maurice Kelly, David Scrivener, Will Skaggs, and Jerry Hamilton testified about various surveillance videos that were taken from the victim's residence at 117 Parkway, from a neighboring house at 111 Parkway, and from a nearby apartment or housing complex called Seminole Village. Ten videos were assembled on a portable storage device (usb flash drive) and collectively admitted at trial as State's exhibit no. 10.

Forensic pathologist Dr. Adam Craig testified that John Williams died from a bullet that entered the back of his brain. Arkansas State Crime Lab employee Deborah Britton testified that the bullet recovered from Williams's head was consistent with a 9 mm Luger cartridge. Osceola police officer Colby Newell photographed the crime scene and confirmed that Williams had died there.

Harold Weeden testified for the State. He agreed to speak against Clark in exchange for a conditional fifteen-year sentence. Weeden said that the plan on 12 October 2016 was to rob Williams because Williams had been pictured on Facebook with a large amount of money. Weeden said that he left the dice game and went across the street to see "Toots," who was Ashton Clark. There, Weeden, Clark, and Zebarius Hawkins discussed "hitting a lick," which Weeden said meant committing an aggravated robbery. Shakur Bingham joined the group. According to Weeden, during the robbery he (Weeden) used a "Dillinger" style gun that Bingham had supplied, Clark (the defendant) was the getaway driver, and Hawkins was the other gunman who used a 9 mm caliber handgun. Weeden said that during the robbery Hawkins shot at Williams five times. Clark and Bingham were waiting in a vehicle nearby and were "paranoid" after learning that Hawkins had shot Williams, which was not part of the plan.

Clark's defense was that he "wasn't there and didn't do it." To that end, Clark's counsel called Hawkins as a witness, who said that only three people participated in the crime—Hawkins, Weeden, and Bingham. Hawkins also said that the men did not intend to rob Williams. Hawkins's story was that he had previously argued with Williams over some drug money that Williams had fronted him, and Hawkins was upset because Williams had shot at him with a gun, among other things. According to Hawkins, the men intended to confront Williams about the prior incidents and scare him, not rob him. Hawkins claimed he did not decide to shoot Williams until he saw him. Hawkins said that Weeden was the other shooter and used a "rusty 'ole 38 special" revolver. In sum, Hawkins testified that Weeden was the getaway driver (and the second gunman), Bingham was the person

4

seated in the passenger seat who had provided a gun, and he (Hawkins) was a gunman who rode in the backseat.

Andonius Burks testified that he and Clark had a falling-out and that Clark left the dice game when he (Burks) arrived. Weeden, on the other hand, stayed at the game for hours after Clark had left. Hawkins sat in a truck nearby while Weeden played. After playing dice for several hours, Weeden, Hawkins, and Bingham jumped into either a car or a truck together and left. Weeden said "he got that lick" according to Burks's account of that night.

Clark's mother, Shereka Lewis, testified that on the day Williams was killed she called her son to come home to watch his child so she could go play bingo and that Clark was at her house from 5:00 p.m. until 8:20 p.m. The State presented Lewis's theft conviction and the testimony of Osceola police chief Ollie Collins to discredit her.

As a final matter, the State called Weeden as a rebuttal witness, and he confirmed that "[e]very action [he] took in this situation was for the purpose of robbing John Williams."

## A. Aggravated Robbery

Clark argues that the State failed to prove the charge of aggravated robbery because Harold Weeden's testimony about the robbery is uncorroborated. He is correct.

At trial, the circuit court instructed the jury that the State had the burden to prove aggravated robbery beyond a reasonable doubt. Therefore, the State had to prove (1) that with the purpose of committing a theft, Clark, acting alone or with one or more other persons, employed physical force upon another; and (2) that Clark, acting alone or with one

5

or more other persons, was armed with a deadly weapon and inflicted or attempted to inflict death or serious physical injury upon John Williams. *See* Ark. Code Ann. § 5-12-102 (Repl. 2013) (elements of robbery); § 5-12-103(a) (Repl. 2013) (elements of aggravated robbery). No transfer of property needs to take place to complete the offense of aggravated robbery. *Birchett v. State*, 294 Ark. 176, 181, 741 S.W.2d 267, 270 (1987). The crime of aggravated robbery focuses on the threat of harm to the victim. *Williams v. State*, 351 Ark. 215, 225, 91 S.W.3d 54, 60 (2002).

The circuit court determined that Weeden was an accomplice as a matter of law. It stated, "The witness, Harold Weeden, according to his own testimony, is what is known as an accomplice." A person is an accomplice of another in the commission of an offense if, "with the purpose of promoting or facilitating the commission of the offense, the person aids, agrees to aid, or attempts to aid the other person in planning or committing the offense." Ark. Code Ann. § 5-2-403(b)(2) (Repl. 2013).

A person cannot be convicted of aggravated robbery based on the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant . . . with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1)(A) (Supp. 2017). Corroboration "is not sufficient if it merely shows that the offense was committed and circumstances" thereof. Ark. Code Ann. § 16-89-111(e)(1)(B). Corroborating evidence must be substantive in nature, meaning it must be directed toward proving the connection of the accused with the crime, not directed toward corroborating the accomplice's testimony. *Olles v. State*, 260 Ark. 571, 573, 542 S.W.2d 755, 758 (1976). Corroborating evidence need not, however, establish each element of an offense or corroborate every detail

of the accomplice's testimony. *MacKool v. State*, 365 Ark. 416, 231 S.W.3d 676 (2006). It does not have to be enough, standing alone, to sustain the conviction. But an accomplice's testimony must be corroborated by additional, independent evidence that tends to connect the defendant with the crime. *Henderson v. State*, 279 Ark. 435, 440, 652 S.W.2d 16, 19 (1983). The ultimate question is this: if the testimony of the accomplice is completely eliminated from the case, does the other evidence independently establish the crime and tend to connect the accused with its commission? *Id.*

The "wealth of independent corroborating evidence" that the State says links Clark to the aggravated robbery is Zaria Coleman's testimony that Clark was with Weeden, Hawkins, and Bingham less than one hour before John Williams was murdered. And the State says that Coleman's testimony placed Clark in the black SUV "adorned with a campaign sign," the vehicle used during the crime.

The State also argues that the videos in State's exhibit no. 10 showed the following:

- The small black SUV with a sign on the passenger side driving past Williams's house as he worked in his driveway on his car;

- "[T]he SUV entering the housing complex, driving to a secluded location, leaving, and returning moments before Williams was shot";

- Two armed men approaching Williams from the rear of his home "minutes after the SUV returned to the complex";

- The two men pursuing Williams "after he raised his hands and attempted to run away";

- The two men fleeing the scene after shooting Williams in the back; and

- The black SUV leaving the complex moments after Williams was shot.

And the substantial corroborating evidence includes Coleman's testimony that Clark and Bingham were observed together at the scene of the crime "a short while after the SUV left the complex." Finally, the State cites as corroborating evidence the medical expert's conclusion that Williams died of a gunshot wound "in the manner of a homicide."

Having viewed the evidence in the light most favorable to the State, we hold that substantial evidence was not presented to support the conclusion that Clark aided an aggravated robbery. Caselaw makes the point.

In *Green v. State*, 265 Ark. 179, 577 S.W.2d 586 (1979), our supreme court reasoned and held as follows:

> The only evidence presented by a codefendant was that they planned to rob the Exxon Station and when it produced only $5 they subsequently decided to rob Church's Fried Chicken. The testimony relating to the robbery of the Exxon Station by David Zimmerman was that he saw four people in a car at the Exxon Station. He could not identify any of them nor could he tell if the people were black or white. Mr. Baker, the victim at the station, saw two people with stockings over their heads. He didn't see the other two people and could not identify any of them or the vehicle they were in. Appellant did not testify nor did he give a statement relating to the Exxon Station robbery. Appellant's statement to the officers with reference to the Church's Fried Chicken was that he asked the codefendants to take him home. "I asked them to take me home, and on the way home I asked them to stop by Church's Chicken, and they stopped at 12th and Fair Park. I bought a box of chicken and a coke. We parked on the side of the business. I went back to the car. They had a shotgun and a rifle out and they said that they were going to rob the place. I told them to take me home first. They said, "No. As long as we are here, we just as well do it." They said I wouldn't have to get out of the car. I stayed in the car and Billy stayed in the car and got under the steering wheel."
>
> Was the evidence sufficient to sustain a conviction of aggravated robbery of Church's Fried Chicken? Again the codefendant testified that the four of them decided to go rob the Exxon Station and did. They planned to split the money four ways. He also stated there never was a plan to rob another place until after the waterhaul at the Exxon Station. He testified he had pleaded guilty to the robberies of both places and had been sentenced.

8

> Other evidence tended to show the robbery occurred but none of it identified the appellant. The only other evidence was the statement of appellant wherein he steadfastly denied any part of the Church's Fried Chicken robbery. The only fact possibly connecting him with it was that he was there. In his statement appellant insisted he requested the codefendants to drive him home after he found out they planned the second robbery.
>
> . . . .
>
> We still adhere to the principle that a man is innocent until proven guilty. The mere presence of a person at the scene of a crime is not proof of his guilt, otherwise the customers or employees at Church's Fried Chicken might be in appellant's place.

*Id*. at 179–80, 577 S.W.2d at 587–88.

Applying *Green*, and disregarding Weeden's testimony as the law requires us to do, we are persuaded that the State did not sufficiently link Clark to an aggravated robbery. The accomplice-related facts in *Green* were much stronger than in this case, yet the supreme court held in *Green* that the State failed to carry its burden. As the robust case excerpt shows, in *Green*, the defendant was riding in a car with other men who had just robbed a gas station. The defendant knew the men had two guns and were planning on committing a second robbery at Church's Fried Chicken. The defendant asked to be taken home first. The robbers refused. So the defendant sat in the car outside the restaurant (eating and drinking) while it was robbed. He did not attempt to leave. He did not attempt to thwart the crime. But all these facts were not enough to sufficiently corroborate the accomplice testimony. *See also Dunn v. State*, 256 Ark. 508, 514, 508 S.W.2d 555, 559 (1974) (riding in the same automobile is insufficient corroboration to sustain aggravated-robbery conviction).

9

Here, the State's case is much weaker than it was in *Green*. That Coleman placed Clark in the vehicle used an hour or so later during a confrontation with Williams does not tend to connect Clark with an aggravated robbery. That Clark saw Bingham with some uncertain number of other onlookers at the crime scene (perhaps up to as many as thirty) shortly after Williams died does not chin the sufficient-corroboration pole either. *Green*, *supra* (mere presence at crime scene is not enough). Coleman's concern that Hawkins "had just robbed one of [her] friends the week before" or Burks's account that Weeden said "he got that lick" tends to connect Weeden and Hawkins—not Clark—to an aggravated robbery.

The State's assertion that the video evidence substantially connects Clark to an aggravated robbery is mistaken. We have reviewed the recordings in the record. The number of people in the vehicle cannot be identified from the video, much less can identities be discerned. And contrary to the State's brief, videos four and five in State's exhibit no. 10 do not show that Williams held up his hands when approached (a gesture that could mean any number of things had it happened). Williams paused ever so briefly in the direction of two men, then he turned and ran away from them. Here is what the lead detective told the jury: "[Y]ou can see him [the victim John Williams]. That's it. You just see him take off running." The video evidence shows that the two gunmen gave chase, there are flashes of light in the night, Williams eventually falls, and the two gunmen go separate ways. There is no audio to the video exhibit, and the videos show no indicia of the two gunmen trying to *commit a theft*. In fact, none of the ten videos in the record

10

sufficiently support the inference that a robbery was planned or attempted or that one occurred.

The critical legal point is that there is no evidence that Williams was the victim of an intended theft apart from Weeden's testimony—and we are duty bound by the law to disregard his words. Even though we have viewed the evidence in the light most favorable to the State, we hold that the State showed only that Clark was with Weeden and Hawkins at a nearby house an hour or so before John Williams died and that Clark was with Shakur Bingham (in a crowd of gawkers) at the location where John Williams died. This is not substantial evidence that Clark acted in furtherance of an aggravated robbery. *See Green*, *supra*. The aggravated-robbery conviction must therefore be reversed.

### B. Felony Murder

Clark was charged and tried as an accomplice. The circuit court instructed the jury on first-degree felony murder and identified aggravated robbery as the underlying felony offense for the felony-murder conviction. Because the State failed to provide substantial corroboration of the predicate felony—aggravated robbery—Clark's conviction for first-degree felony murder fails as a matter of law. *Parker v. State*, 292 Ark. 421, 425, 731 S.W.2d 756, 758 (1987) (reversing when evidence showed that felony capital murder was not in the course of and furtherance of a burglary). We must therefore reverse the first-degree murder conviction, too.

### II.  *Conclusion*

The State did not present enough evidence that tended to connect Clark with the aggravated robbery of John Williams. More specifically, accomplice Harold Weeden's

11

testimony that an aggravated robbery was intended was insufficiently corroborated under the governing legal standards. Because aggravated robbery was the predicate felony for the felony-murder charge, Clark's first-degree murder conviction must also be reversed.

The 20 September 2018 sentencing order that was appealed in this case is hereby vacated.

Reversed and dismissed.

GRUBER, C.J., and MURPHY, J., agree.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.