John Parker HEATHSCOTT *v.* Christopher C. RAFF

98-801 973 S.W.2d 799

Supreme Court of Arkansas
Opinion delivered September 14, 1998

*Appellant,* pro se.

*Jeff Rosenzweig,* for appellee.

RAY THORNTON, Justice. In this election case, the appellant's eligibility to seek the office of prosecuting attorney is contested on the ground that he is not "learned in the law" as required by the Arkansas Constitution. Appellee Christopher Raff is the incumbent prosecuting attorney for the Seventeenth—

East Judicial District of White and Prairie Counties, and the Democratic nominee in the general election for that office. Appellant John Parker Heathscott, who is not a licensed attorney, is the Republican nominee.

Mr. Raff moved for declaratory judgment and mandamus to have Mr. Heathscott's name removed from the ballot. Mr. Raff contends that Mr. Heathscott is not "learned in the law" as required for that position by Ark. Const. art. 7, § 24. Section 24 provides the following:

> The qualified electors of each circuit shall elect a prosecuting attorney, who shall hold his office for the term of two years, and he shall be a citizen of the United States, *learned in the law*, and a resident of the circuit for which he may be elected (emphasis added).

For reasons which follow, the decision of the trial court directing that Mr. Heathscott not be certified for the ballot is affirmed.

During the hearing on the motions, Mr. Raff argued that "learned in the law" is an archaic term of art that must be considered in the context of the time in which it was crafted. In this regard, he presented expert testimony[1] that in 1874, when the constitution was drafted, law schools and the modern bar examination did not exist. Instead, applicants became members of the bar after reading and independent study with certified lawyers, and after passing an oral examination given by a judge or panel of judges. According to the testimony, the examining panel would find applicants to be "learned in the law" and would admit them to the bar. Mr. Raff argues that this State now has a mechanism in place for determining whether one is "learned in the law," that is, graduation from a law school and passing the bar examination. He urges that any other interpretation of the phrase would engender

---

[1] Robert Wright, III, Donaghey Distinguished Professor of Law at the University of Arkansas at Little Rock School of Law, based his opinion on his years of study as a legal historian and quoted a speech given by Eugene Matthews to the Arkansas Bar Association, printed at 11 ARK. L. REV. 273 (1956–1957).

chaotic, standardless, and *ad hoc* interpretations of an applicant's qualifications.

Mr. Heathscott, on the other hand, argues that "learned in the law" should be interpreted as a mere direction to the voters that leaves the determination of a candidate's qualifications to the electorate. He maintains that he is "learned in the law" because he participated in summary court martials in the United States Navy twenty-seven years ago, attended an eight-week course at the Law Enforcement Training Academy twenty-two years ago, and had handled some matters *pro se* in the White County court. Mr. Heathscott admitted having little knowledge of the rules of civil and criminal procedure, or of federal cases construing the United States Constitution, and readily agreed that he is not a licensed attorney. However, he argued that he would not be hindered in the responsibilities of the office because he would be assisted by licensed attorneys.

The trial court determined that "learned in the law" means that the prosecuting attorney must have graduated from a law school and have passed the bar examination. Because Mr. Heathscott did not meet these requirements, the court found that he was not qualified to run for office. The court ordered the Secretary of State to refrain from certifying Mr. Heathscott for the ballot.

Arkansas law is silent on the meaning of "learned in the law." Nonetheless, Mr. Heathscott seeks support in *Weems v. Supreme Court Comm. on Professional Conduct*, No. 74-5 (Ark. Sup. Ct., February 4, 1974), an unreported per curiam from this court. In that case, Weems was disbarred while he held the office of prosecuting attorney. In denying his motion to stay the judgment of the trial court pending final appeal, we noted that disbarment did not automatically effect a removal from office because there were prescribed constitutional procedures for removal. *See* Ark. Const. art. 15, § 1.

Besides being unpublished and not serving as valid precedent, the *Weems* decision does not help Mr. Heathscott. We did not discuss the eligibility requirements for the prosecuting attorney's office in the per curiam. Rather, we considered whether disbarment during the prosecuting attorney's elected term would auto-

matically expel an elected official from holding an office for which he was qualified when elected.

Because there is no Arkansas law on the meaning of "learned in the law," we first note that Black's Law Dictionary provides the following definition: "In statutes prescribing the qualifications of judges, "learned in the law" designates one who has received a regular legal education, the almost invariable evidence of which is the fact of his admission to the bar." BLACK'S LAW DICTIONARY 889 (6th ed. 1990).

Turning to the decisions of other jurisdictions reveals that most states which have interpreted "learned in the law" in their constitutions have equated it with the qualification to practice law in the state. *See, e.g., In re Teigen,* 221 N.W.2d 94 (N.D. 1974) (observing that the framers of the constitution used "learned in the law" in the sense of attorney-at-law, and that this view has been uniformly accepted by the few authorities on the subject); *In re Scarrella,* 221 N.W.2d 563 (Minn. 1974) (holding that "learned in the law" means admitted or entitled to be admitted to practice as an attorney-at-law in the state); *New Mexico ex rel. Chavez v. Evans,* 446 P.2d 445 (N.M. 1968); *Opinion of the Justices,* 181 So. 105 (Ala. 1965); *Freiler v. Schuylkill County,* 46 Pa. Super. 58 (1911) (observing that the phrase clearly indicates an intention to prescribe some sort of an educational qualification, and should be given some practical effect); *Howard v. Burns,* 85 N.W. 920 (S.D. 1901).

The seminal case on the subject is *Jamieson v. Wiggin,* 80 N.W. 137 (S.D. 1899). In that case, the defendant's eligibility to hold the office of county judge was contested on the ground that he was not "learned in the law" as required by the constitution because he was not a licensed attorney. The Supreme Court of South Dakota rejected the interpretation given a different phrase, "well informed in the law of the state" by the Supreme Court of Texas in *Little v. State,* 12 S.W. 965 (Tex. App. 1890).

In contrast to the Texas court, the South Dakota court determined that "learned in the law" is a fact question that must be ascertained by a competent tribunal prior to the election. *Id.* The court declared that "the only and conclusive evidence of such fact

[is] an admission to the bar by a court of this or some other jurisdiction authorized to license persons to practice as attorneys at law." *Id.* at 138. In reaching its decision, the court reasoned that the phrase was inserted for a purpose, maintaining that the phrase "clearly indicates an intention to prescribe some sort of an educational qualification, and should be given some practical effect." *Id.* Decisions from other jurisdictions follow the *Jamieson* reasoning. *See, In re Teigen; In re Scarrella; New Mexico ex rel Chavez; Opinion of the Justices; Freiler; Howard; supra; But see Ex parte Craig,* 193 S.W.2d 178 (Tex. 1946), *rev'd on other grounds,* 331 U.S. 367 (1947).

We do not find the Texas cases to be persuasive. Article 5, section 15 of the Texas Constitution prescribes that the county judge shall be "well informed in the law of the State." Both Texas cases involve county judges. In those cases, the Texas court construes well informed in the law as a mere direction to the voters who determine whether the candidate is sufficiently well informed in the law to hold that high office. *See Ex parte Craig, supra; Little v. State, supra.* Well informed in the law, unlike "learned in the law," is not a term of art given force through centuries of English and American usage.

 The holding that "learned in the law" is synonymous with membership in a bar is congruent with the phrase's historical origin. "Learned in the law" comes from ancient English constitutional history, which evidences a desire to have professionally qualified judges. Frederic S. Le Clercq, *The Constitutional Policy That Judges Be Learned in the Law,* 47 TENN. L. REV. 689,694 (1980). Professor Le Clercq writes that, as far back as 1215, King John of England "pledged to his barons in the Magna Carta that he would 'appoint as justices, constables, sheriffs, or bailiffs, only such as know the law of the realm.'" *Id.* He writes further that the earliest reference to the phrase "learned in the law" is in a 1344 statute that provides:

> Two or three of the best of Reputation in the Counties shall be assigned Keepers of the Peace by the King's Commission, and at what time Need shall be, the same, with other wise and *learned in the Law,* shall be assigned by the King's Commission to hear and

> determine Felonies and Trespasses done against the Peace in the same Counties . . . .

*Id.* From this he observes that, although justices of the peace were not required to be learned in the law, they were assured access to a clerk learned in the law." *Id.* (internal citations omitted).

Professor Le Clercq describes two types of lawyers in English law, namely, barristers and serjeants. *Id.* at 696 (citing BLACK-STONE, COMMENTARIES ON THE LAWS OF ENGLAND 23 (G. Childs ed. 1869)). Barristers, he says, were apprentices of the law, being admitted only after a long period of study in the inns of court. *Id.* He notes that barristers could not fill the office of full advocate until they had completed sixteen years of study, at which time, they might also be "called to the state and degree of serjeants." *Id.* From the degrees of barrister and serjeant, some could be called to be his majesty's counsel, "learned in the law." *Id.*

That "learned in the law" is an ancient term of art was also noted by the Supreme Court of North Dakota when it wrote that "as early as 1608, King James I of England was told that he was not qualified to determine the law, in that he was not learned in the laws of his realm." *In re Teigen*, 221 N.W.2d at 99-100 (citing Edward S. Corwin, *The "Higher Law" Background of American Constitutional Law*, 42 HARVARD L. REV. 149, 365 (1928-1929) in SELECTED ESSAYS ON CONSTITUTIONAL LAW 29 (1929)). In responding to the King's belief that the law was founded on reason, and that as a man of reason he was qualified to judge, Sir Edward Coke stated:

> True it was, that God had endowed his Majesty with excellent science, and great endowments of nature; but his Majesty was not learned in the laws of his realm of England, and causes which concern the life, or inheritance, or goods, or fortunes of his subjects, are not to be decided by natural reason, but by the artificial reason and judgment of the law, which law is an act which requires long study and experience, before that a man can attain to cognizance of it . . . .

*Id.*

The Tennessee cases cited by Mr. Heathscott deserve separate mention because he argues they are persuasive authority. We

think they are not. In *Heard v. Moore*, 290 S.W.15 (1926), the court remarked that the words "learned in the law" as used in an act that created the office of county judge in Sequatchie County was not a requirement that the office be held by a licensed attorney, but was intended as a direction to the voters. *Id*. at 17. The court followed the Texas case, *Little v. Texas, supra*, reasoning that the phrase was a vague, indefinite and uncertain phrase and that the legislature could have used the words "licensed attorney" if it intended to prohibit a layman from holding such an office. *Id*.

Professor Le Clercq had this to say regarding the *Heard* decision:

> It is a poignant comment on the frailty of the human condition and the immense toll exacted by death on our understanding of the institutions by which we are governed that in 1926 the Tennessee Supreme Court would approvingly quote the solecism of a South Dakota court that the "phrase 'learned in the law' . . . is alliterative, euphonious, vague and indefinite."

Le Clercq, *supra*, at 713.

The Tennessee Court took the opposite view in *LaFever v. Ware*, 365 S.W.2d 44 (1963), where the issue was the constitutionality of a statute requiring that the judge of the general sessions court of White County be a licensed attorney of the state when the constitution provided qualifications for that position. In holding that the constitutional qualifications were minimal requirements giving the legislature the power to add to these qualifications, the court announced that the phrases, "learned in the law" and "licensed to practice law," are synonymous. *Id*. at 51.

Perhaps as a result of the confusion in its decisions regarding the interpretation of "learned in the law," Tennessee has now enacted law requiring all judges to be licensed to practice law. The Tennessee code provides that "[n]otwithstanding any other provision of law to the contrary, effective September 1, 1990, all persons occupying the office of general sessions judge *shall be licensed to practice law in this state*" Tenn. Code Ann. § 16-15-5005 (a) (Repl. 1994) (emphasis added). Section 17-1-106(a) provides that "judges of the supreme court, court of appeals, chancery

courts, circuit courts, and criminal courts . . . *shall be learned in the law, which must be evidenced by the judge being authorized to practice law in the courts of Tennessee.* Tenn. Code Ann. § 17-1-106(a) (Repl. 1994) (emphasis added).

■ One of the fundamental principles or rules in the construction of a constitution is that effect must be given to every part and that, unless there is some clear reason to the contrary, no portion of the fundamental law should be treated as superfluous, meaningless, or inoperative. *Williams v. Douglas,* 251 Ark. 555, 557, 473 S.W.2d 896, 898 (1971). Mr. Heathscott's construction would make inoperable, or nullify the phrase, "learned in the law." To give meaning to the phrase, we must recognize its ancient origin and application in England and in this country.

As a term of art, in 1874 when our constitution was drafted, the phrase most likely referred to attorneys-at-law who had been admitted to the bar after passing an oral exam. That this interpretation is reasonable is further borne out by the history of legal education in this state. When our constitution was drafted, Arkansas had no prescribed educational requirements as a condition to practice law. Eugene A. Matthews, *The President's Address: Looking Backward—To See Forward,* ARK. L. REV. 273 (1956-1957). To practice law, a person had to pass an oral examination by a committee appointed by the circuit court from practitioners at the bar of that court. *Id.* at 280. Admission to practice in the supreme court was obtained by motion without further examination. *Id.* In 1917, the Legislature passed a bill providing for a Board of Bar Examiners for each judicial circuit, each of which would use a list of questions prepared by the central board in the subject areas to be tested. In 1938, the people adopted amendment 28 to the constitution which granted to the supreme court the power to make rules regulating the practice of law and the professional conduct of attorneys-at-law. *Id.* at 280-281. It was not until 1949 that the supreme court required two years of college work and graduation from an approved law school as a prerequisite to examination and admission to the bar. *Id.* at 281. Amendment 28 grants authority to the court to prescribe what education and legal training must be attained to become eligible

for examination by the State Board of Bar Examiners and for admission as licensed attorneys.

■ Based on the American and English use of the phrase, and our own legal-education history, we hold that the constitutional qualification phrase "learned in the law" means an attorney licensed to practice law in the state. We do not agree with the trial court's finding that the phrase automatically includes graduation from a law school and note that there are yet attorneys licensed to practice law who have not graduated from a law school. Because graduation from a law school is now required to become a licensed attorney, eventually all licensed attorneys will be graduates of a law school.

■ Clearly, Mr. Heathscott is not a licensed attorney, and the trial court's decision to prevent his name from being certified as a nominee for prosecuting attorney of the Seventeenth-East Judicial District because of his failure to meet the required constitutional qualification of being "learned in the law" is affirmed.