Ronald A. WEATHERFORD *v.* STATE of Arkansas

CA CR 02-415                                   101 S.W.3d 227

Supreme Court of Arkansas
Opinion delivered March 20, 2003

*Hampton & Larkowski*, by: *Mark F. Hampton*, and *J. Thomas Sullivan*, of counsel, for appellant.

*Mark Pryor*, Att'y Gen., by: *Jeffrey Weber*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Ronald A. Weatherford was convicted in the Pulaski County Circuit Court of manufacture of methamphetamine, possession of drug paraphernalia with intent to manufacture, and possession of drug paraphernalia. On the first count, he was sentenced to a term of ten years' imprisonment in the Arkansas Department of Correction. He received a fine in connection with the remaining two counts. Subsequently, Appellant lodged an appeal with the Arkansas Court of Appeals challenging his conviction. At the time that he lodged his appeal, Appellant also filed a motion seeking to waive the prohibition of citation to unpublished court of appeals' opinions as set forth in Ark. Sup. Ct. R. 5-2(d). The court of appeals certified that motion to this court on August 27, 2002, on the basis that the motion dealt with the constitutionality of a rule of this court; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(6). We deny Appellant's motion.

Following the certification of Appellant's motion, this court entered an order staying the briefing schedule of Appellant's direct appeal, pending a decision by this court on his motion. We also ordered that the motion was to be submitted as a case and ordered briefing on the matter on September 12, 2002. Appellant avers that Rule 5-2(d)'s prohibition should be waived, because he needs to rely on certain unpublished opinions as persuasive authority in establishing his argument that there was not sufficient evidence

supporting his conviction. He argues that the rule's prohibition implicates constitutional concerns. In this regard, he raises four separate arguments. First, Appellant argues that application of Rule 5-2(d) violates his right to due process under the Fourteenth Amendment to the United States Constitution. Second, he argues that application of the rule violates his right to due process under Article 2, §§ 8 and 21, of the Arkansas Constitution. Next, Appellant avers that the rule violates his right to effective assistance of counsel under the Sixth Amendment of the United States Constitution. Finally, Appellant claims that prohibiting him from relying on unpublished opinions violates his right to be heard through counsel under Article 2, § 10, of the Arkansas Constitution.

Before addressing Appellant's arguments, it is helpful to consider the current context surrounding the issue of prohibiting reliance on unpublished opinions. The role of unpublished cases took on recent importance following a decision by the Eighth Circuit Court of Appeals in *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000). That case involved an appellant claiming that she was entitled to a refund from the Internal Revenue Service, resulting from an overpayment of her federal income taxes. The appellant waited three years to seek the refund and, in fact, mailed her claim immediately prior to the expiration of time in which she could seek the refund. The IRS did not receive her claim until one day after the expiration period. The appellant filed suit claiming that a liberal interpretation of the "mailbox rule" should be applied in her case, thus, meaning that she timely filed her claim, because she mailed it prior to the deadline.

At the time that the case reached the Eighth Circuit, there were no published opinions directly on point, but the court had addressed this precise situation in an unpublished opinion in *Christie v. United States*, No. 91-2375MN (8th Cir. March 20, 1992) (*per curiam*). There, the court rejected the parties' argument that the "mailbox rule" provided that their claims had been filed timely because they had been mailed prior to the expiration of the three years. Because *Christie* was not published, however, it was not binding precedent on the court of appeals. Recognizing this problem, the court determined that its Rule 28A(i), governing unpublished opinions, was unconstitutional under Article III of the United States Constitution, because it attempted to confer on

the federal courts a power in excess of the "judicial" power. In reaching this conclusion, the court stated:

> Inherent in every judicial decision is a declaration and interpretation of a general principle or rule of law. *Marbury v. Madison*, 5 U.S. 137, 1 Cranch 137, 177-78, 2 L.Ed. 60 (1803). This declaration of law is authoritative to the extent necessary for the decision, and must be applied in subsequent cases to similarly situated parties. *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 544, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991); *Cohens v. Virginia*, 6 Wheat. 264, 399, 5 L.Ed. 257 (1821). These principles, which form the doctrine of precedent, were well established and well regarded at the time this nation was founded. The Framers of the Constitution considered these principles to derive from the nature of judicial power, and intended that they would limit the judicial power delegated to the courts by Article III of the Constitution. Accordingly, we conclude that 8th Circuit Rule 28A(i), insofar as it would allow us to avoid the precedential effect of our prior decisions, purports to expand the judicial power beyond the bounds of Article III, and is therefore unconstitutional. That rule does not, therefore, free us from our duty to follow this Court's decision in *Christie*.

*Anastasoff*, 223 F.3d at 899–900 (footnote omitted). The court stated that it did not mean to imply that the Framers anticipated publication of all opinions; rather, the Framers did not intend limited reporting to be an impediment to the precedential nature of judicial opinions. Thus, according to the court's reasoning in *Anastasoff*, all decisions of the court of appeals should be regarded as binding precedent. The court then rejected the appellant's claim, finding that it was bound by the panel's decision in *Christie*. In concluding its opinion, the court noted that this case was not about a requirement that all cases be published; rather, the question resolved was the precedential effect of opinions, published or not.

The decision in *Anastasoff* was later vacated as moot, after the government notified the court that it intended to pay Anastasoff's claim in full. *See Anastasoff v. United States*, 235 F.3d 1054 (8th Cir. 2000). Thus, as the court pointed out, "[t]he constitutionality of that portion of Rule 28A(i) which says that unpublished opinions have no precedential effect remains an open question in this Circuit." *Id.* at 1056. This remains the case today.

The debate surrounding "no citation" rules deepened following the Ninth Circuit's opinion in *Hart v. Massanari*, 266 F.3d 1155

(9th Cir. 2001). Therein, an attorney violated the court's no-citation rule by relying on an unpublished opinion, but argued that the rule was unconstitutional in light of the Eighth Circuit's opinion in *Anastasoff*. The court ordered that the attorney show cause as to why he should not be sanctioned for violating the no-citation rule. According to the opinion in *Hart*, the court in *Anastasoff* erred in determining that rules, such as the one prohibiting citation to unpublished opinions, violated the court's judicial power conferred under Article III. According to the court in *Hart*, the "judicial power" clause had never before been thought to encompass a constitutional limitation on the manner in which courts conduct their business. *Id*. The court stated in relevant part:

> [W]e question whether the "judicial Power" clause contains any limitation at all, separate from the specific limitations of Article III and other parts of the Constitution. The more plausible view is that when the federal courts rule on cases or controversies assigned to them by Congress, comply with due process, accord trial by jury where commanded by the Seventh Amendment and generally comply with the specific constitutional commands applicable to judicial proceedings, they have ipso facto exercised the judicial power of the United States. In other words, the term "judicial Power" in Article III is more likely descriptive than prescriptive.

*Id*. at 1161 (footnote omitted).

The court in *Hart* also disagreed with the contention in *Anastasoff* that there existed a historically-based constitutional requirement of binding precedent. According to the court in *Hart*, the notion of binding precedent developed gradually over the nineteenth and twentieth centuries. Thus, the *Hart* court rejected the Eighth Circuit court's opinion in *Anastasoff* that a court may not decide which of its opinions will be deemed binding on itself.

This court has also recently been faced with a constitutional challenge to its rule prohibiting citation to unpublished opinions in *Williams v. State*, 351 Ark. 215, 91 S.W.3d 54 (2002). In that case, the appellant contended that Rule 5-2(d) was unconstitutional because it allowed the court to ignore its own precedent, thus exceeding its judicial authority. The appellant relied on the *Anastasoff* decision, but to no avail. Agreeing with the State, this court determined that a person must have suffered an injury or

belong to a class that is prejudiced in order to have standing to challenge the validity of a rule. *Id.* (citing *Ross v. State*, 347 Ark. 334, 64 S.W.3d 272 (2002)). The court then concluded that the appellant lacked such standing, as he was not seeking to rely on unpublished opinions of this court, but rather sought to rely on unpublished opinions of the court of appeals. *Id.* This court reasoned that because court of appeals' decisions have no binding effect on this court, the appellant lacked standing to challenge the rule. There is no such lack of standing in the present appeal, however, as Appellant's direct appeal is pending before the court of appeals. With this background history in mind, we now turn to Appellant's arguments on appeal.

## I. *Violation of Federal Due Process*

Appellant first argues that the application of Rule 5-2(d) preventing him from relying on unpublished opinions violates his right to due process of law by depriving him of access to available law to support his arguments on appeal. According to Appellant, the need to rely on unpublished opinions is particularly significant in a case such as his, because he is attempting to rely on these opinions to support his argument that there was insufficient evidence submitted at trial to support the charges against him. According to Appellant, challenges to the sufficiency of the evidence are clearly fact intensive because the law governing substantial evidence is understood best when applied to the facts in an individual case. Appellant claims that in his case there is no binding precedent that he can rely on in support of his argument; thus, he must couch his sufficiency argument in terms of differentiating his case from prior cases where the evidence was held sufficient. According to Appellant, this line of argument is necessary in order to avoid summary dismissal on the basis that his arguments are not supported by authority. Appellant then asserts that his right to be free from a conviction not supported by sufficient evidence compels the conclusion that he be allowed to rely on unpublished opinions to establish why there was insufficient evidence in his case. We disagree.

The history of Rule 5-2 demonstrates that the proscription against relying on unpublished opinions first appeared in 1974. Originally codified as Ark. Sup. Ct. R. 21, the rule applied only to opinions of this court, as there was no intermediate appellate

court in existence at that time. In a *per curiam* opinion addressing the issue, this court stated that Rule 21 was being amended to eliminate the publication of opinions that had no precedential value. This court then set forth the standards for publication, stating:

> An opinion of this court shall not be designated for publication unless:
>
> (a) The opinion establishes a new rule of law or alters, modifies, or clarifies an existing rule; or
>
> (b) The opinion involves a legal or factual issue of continuing public interest; or
>
> (c) The opinion criticizes existing law; or
>
> (d) The opinion resolves a real or apparent conflict of authority; or
>
> (e) The opinion will serve as a useful reference, such as one reviewing case law or legislative history.

*In Re: Opinions, Standards For Publication—Copies Available*, 257 Ark. 1065 (1974) (*per curiam*). This court went on to state that those opinions not designated for publication could not be "cited, quoted, or referred to by any court or in any argument, brief, or other materials presented to any court[.]" *Id.* at 1066.

Following the creation of the court of appeals, Rule 21 was again amended in 1979. In another *per curiam* opinion, this court stated that all of its signed opinions would be designated for publication, but then set forth criteria allowing only certain opinions of the court of appeals that "resolve novel or unusual questions" to be published. *In Re: Changes in Supreme Court Rules*, 265 Ark. 972, 973 (1979) (*per curiam*). The proscription against citing to unpublished opinions remained the same.

The rationale underlying the prohibition against citing to unpublished opinions was discussed by the court of appeals in *Aaron v. Everett*, 6 Ark. App. 424, 644 S.W.2d 301 (1982). There, the court stated:

> An opinion which qualifies as one not designated for publication is written primarily for the parties and their attorneys. These interested parties already are knowledgeable of the facts of their case. For that reason, such nonpublished opinions often do not contain a litany or rehash of those matters which underly the legal issue(s) decided by this Court. Once again, we state that

> nonpublished opinions will not be considered as authority and should not be cited to this court.

*Id.* at 426, 644 S.W.2d at 302. *See also Yockey v. Yockey*, 24 Ark. App. 169, 750 S.W.2d 420 (1988).

The Court of Appeal of Louisiana similarly discussed the reasons behind no-citation rules, stating:

> The reason for such rules is that citation or reliance on unpublished opinions by counsel or by courts defeats the entire purpose for which unpublished opinions are allowed—to ease the burden on judges by allowing them to decide cases involving well settled principles of law without having to spend the extensive time and effort that is required in deciding cases involving unsettled principles of law and writing full-fledged, . . . opinions.

*L.M. v. J.P.M.*, 714 So.2d 809, 811 (La. Ct. App. 1998) (citing George Rose Smith, *The Selective Publication of Opinions: One Court's Experience*, 32 ARK. L. REV. 26 (1978)).

Here, Appellant states that there are five decisions that he relies on in his brief in support of his arguments challenging the sufficiency of the evidence. Those decisions include: *Bolton v. State*, 2001 WL 577062 (Ark.App.); *Dodson v. State*, 2001 WL 615330 (Ark.App.); *Porter v. State*, 2001 WL 56444 (Ark.App.); *Strom v. State*, 2001 WL 167822 (Ark.App.); and *Zajac v. State*, 1999 WL 436283 (Ark.App.). According to Appellant, these cases are either the only known decisions demonstrating the argument that he is raising, or are the most appropriate opinions available to support the proposition advanced.

Appellant, however, fails to cite to any cases that stand for the proposition that due process requires that Appellant be able to cite to unpublished opinions. Instead, he relies on the United States Supreme Court's decisions in *Fiore v. White*, 531 U.S. 225 (2001), and *Fiore v. White*, 528 U.S. 23 (1999). Appellant opines that the litigation in *Fiore* demonstrates that federal due process guarantees require a minimum level of procedural fairness in the operation of state appellate review systems. *Fiore* involved a petitioner seeking federal habeas relief on the ground that his conviction under Pennsylvania law was based on an inconsistent application of state law. The petitioner's argument was based on the fact that while one appellate panel rejected his argument challenging the sufficiency of the evidence, another appellate panel

agreed with his co-defendant that his conviction was not supported by substantial evidence. The Supreme Court agreed with the petitioner, holding that his conviction violated due process. *Fiore*, however, is inapposite to the present case. While we agree that an appellant is entitled to fundamental fairness in appellate proceedings, we do not agree with Appellant's unsupported assertion that due process requires that he be entitled to rely on unpublished opinions.

We believe it is important to note that while Appellant challenges the constitutionality of Rule 5-2(d), he does not argue that the rule should be abolished. Likewise, he does not argue that there are cases representing binding precedent that he should be allowed to rely on; rather, he simply wants to rely on certain opinions as persuasive authority. Specifically, he wants to rely on the factual circumstances of those opinions to demonstrate how the evidence was insufficient in his case. While Appellant may prefer those cases that are not published, there is nothing to indicate that Appellant is impaired in seeking appellate relief by not being able to rely on those cases. There are ample published opinions setting forth the test for sufficiency of the evidence, as well as its application.

██ In reviewing a sufficiency issue, the reviewing court is charged with viewing the evidence in the particular case on appeal. *See, e.g., Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002); *Williams v. State*, 346 Ark. 304, 57 S.W.3d 706 (2001); *Wilson v. State*, 332 Ark. 7, 962 S.W.2d 805 (1998). This issue was discussed by Justice George Rose Smith, who stated:

> The court, in adopting its selective-publication rule, sought to achieve two goals—a reduction in the volume of published opinions and a reduction in the amount of time devoted to opinion writing. The justification for the first goal lies simply in the undeniable truth that many appellate court opinions are of no precedential value. Of course, like snowflakes, no two cases are exactly alike. But, for the purpose of selective publication, the question is whether the factual differences between one case and another are of precedential value. For instance, it is a familiar rule that out-of-court declarations of an alleged agent are not admissible to prove the agency. *Here it is the rule of law, not the differences in the fact situation, that is important.*

32 ARK. L. REV. 26, 28 (emphasis added). Likewise, the evidence used to support a conviction in one manufacture case is of no

moment in this case; thus, even if Appellant were allowed to cite to unpublished opinions, there is no requirement that this court agree with Appellant's assessment that a particular case constitutes persuasive authority. *See Webb v. State*, 318 Ark. 581, 886 S.W.2d 624 (1994). *See also Heathscott v. Raff*, 334 Ark. 249, 973 S.W.2d 799 (1988). Accordingly, Appellant's argument on this point fails.

## II.    *Violation of this State's Law of the Land*

For his second point on appeal, Appellant argues that the prohibition of Rule 5-2 violates his right of due process under Article 2, §§ 8 and 21, of the Arkansas Constitution. While this argument mirrors Appellant's previous one, he further avers that under section 21, the due-process right is predicated on the "law of the land." According to Appellant, this is a reference to the law applicable at the time of the section's adoption. Arguing for an expanded interpretation of "law of the land," Appellant avers that the phrase must refer to the entire body of law known to govern individual rights at the time of adoption of the state constitution; thus, judges are not authorized to act beyond the powers accorded by the Judicial Article. Appellant states that the Judicial Article does not allow this court to abrogate the common law, which he argues, is precisely what this court has done in the application of Rule 5-2(d). Appellant concludes his argument on this point by stating that his right to rely on the entire body of available Arkansas law in advancing his sufficiency argument is protected by section 21's reference to "law of the land."

██ ██    Appellant's argument on this point mirrors the discussion set forth in *Anastasoff*, 223 F.3d 898. Thus, for Appellant to prevail on this theory, this court must agree that the judicial power does not encompass the ability of this court to set forth a rule regarding the reliance on unpublished opinions. At the time of this rule's enactment, this court's judicial power was derived from Article 7, § 4, of the Arkansas Constitution. That section was repealed by Amendment 80, but this amendment still grants this court the power to set forth rules governing all courts. Moreover, it is well settled that this court possesses the inherent authority to make procedural rules. *State v. Sypult*, 304 Ark. 5, 800 S.W.2d 402 (1990); *Ricarte v. State*, 290 Ark. 100, 717 S.W.2d 488 (1986). *See also Standridge v. Standridge*, 304 Ark. 364, 803 S.W.2d 496 (1991). As previously stated, this court's rule prohib-

iting citation to unpublished opinions does not impede Appellant's ability to pursue an appeal of his conviction. The Ninth Circuit stated in *Hart*, 266 F.3d 1155, that the federal judicial power clause has never before been construed to limit courts in the manner in which they conduct their business. The same may be said for our state's judicial article. Accordingly, there is no due-process violation under this state's constitution.

### III. Denial of Effective Assistance of Counsel

■ Next, Appellant argues that the proscription of Rule 5-2(d) violates his right to effective assistance of counsel under the Sixth Amendment. According to Appellant, the determination of appellate strategy falls under the notion of effective assistance of counsel, and when counsel is restricted from relying on unpublished opinions to demonstrate what facts have previously been considered significant, counsel's ability to represent his client is compromised. Appellant cites to no legal authority in support of this novel proposition, however. We have frequently stated that we will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Hollis v. State*, 346 Ark. 175, 55 S.W.3d 756 (2001).

■ Appellant does attempt to analogize this case to the situation in *Brooks v. Tennessee*, 406 U.S. 605 (1972), where the United States Supreme Court struck down a Tennessee court rule that required a defendant wishing to testify in his own behalf to be the first witness called by defense counsel. In that case, the Court's primary reason for striking down the rule was that it infringed on a defendant's right to choose whether or not to testify at trial. As a secondary concern, the Court noted that the rule also implicated a defendant's right to due process because it restricted the defendant's counsel's planning of the case. No such restriction can be demonstrated in this case, however. The fact that Appellant's counsel may be restricted in arguing the facts of certain cases in no way restricts counsel from setting forth the facts of his own case and demonstrating how they do not rise to the level of sufficient evidence. Accordingly, Appellant's argument on this point fails.

### IV. Denial of Counsel's Right to be Heard

Finally, Appellant argues that application of Rule 5-2(d) violates his right to be heard through his counsel under Article 2, § 10, of the Arkansas Constitution. Appellant states that section 10's provision that counsel shall be heard means, in the context of an appeal, that counsel be allowed to argue prior decisions available to the public through online research sites. Appellant avers that this court's due-process doctrine regarding effective representation must be based on an expanded protection under section 10, rather than the protections provided under the Sixth and Fourteenth Amendments. Again, however, Appellant fails to cite to any authority or convincing argument in support of this point. We therefore decline to address the merits of this point. *See Hollis*, 346 Ark. 175, 55 S.W.3d 756.

For the foregoing reasons, Appellant's motion is denied.