Ricky Lee SCOTT *v.* STATE of Arkansas

CR 01-1052 139 S.W.3d 511

Supreme Court of Arkansas
Opinion delivered December 18, 2003

[Petition for rehearing denied January 22, 2004.\*]

---

\* DICKEY, C.J., not participating.

*Deenita Monk*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. Ricky Lee Scott appeals the Cross County Circuit Court's denial of his petition for postconviction relief. His prior appeal from the denial of his petition for postconviction relief was reversed and remanded to the trial court to make sufficient written findings of fact and conclusions of law as required under Ark. R. Crim. P. 37.3(c) (2003). *Scott v. State*, 351

Ark. 619, 96 S.W.3d 732 (2003). Scott's conviction for first-degree murder and sentence of life imprisonment were affirmed in *Scott v. State*, 337 Ark. 320, 989 S.W.2d 891 (1999)(*"Scott I"*).

Scott asserts that he is entitled to Rule 37 relief because of : 1) a failure to abstract the docket thereby depriving him of review of the violation of his right to a speedy trial; 2) a failure to properly investigate and assert prior inconsistent statements regarding ballistics; and 3) a failure to seek a mistrial when inadmissible evidence regarding an alleged rape by Scott was introduced. We find no reversible error and affirm the denial of the petition for postconviction relief.

This court has jurisdiction of this case pursuant to Ark. S. Ct. R. 1-2(a)(2)(2003).

### Facts

Scott was convicted of the homicide of fifteen year old Robert Smith. Smith died of gunshot wounds. The evidence showed that Smith and four other persons were changing a tire in the driveway of Smith's aunt's home where Smith was living. According to the witnesses, Scott came around the side of the house and began firing a pistol. Several witnesses identified Scott as Smith's killer.

### Standard of Review

In reviewing a claim of ineffective assistance of counsel, the reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *McGehee v. State*, 348 Ark. 395, 72 S.W.3d 867 (2002); *Thomas v State*, 330 Ark. 442, 954 S.W.2d 255 (1997). To rebut this presumption, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., that the decision reached would have been different absent the errors. *McGehee, supra*. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id*. In determining a claim of ineffectiveness, the totality of the evidence before the factfinder must be considered. *Chenowith v. State*, 341 Ark. 722, 19 S.W.3d 612 (2000). This court will not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous or clearly against the preponderance of the

evidence. *Green v. State*, 343 Ark. 244, 33 S.W.3d 485 (2000). To prevail on a claim of ineffective assistance of counsel, Scott must show that counsel's representation fell below an objective standard of reasonableness and that but for counsel's errors, the result of the trial would have been different. *McGehee, supra; Kemp v. State*, 347 Ark. 52, 60 S.W.3d 404 (2001) *(citing Strickland v. Washington*, 466 U.S. 668 (1984)).

### Insufficient and Incomplete Record

Scott argues first that he is entitled to Rule 37 relief due to a failure to create and provide this court with a complete record sufficient to allow a meaningful review. Scott cites *Ward v. State*, 321 Ark. 659, 660, 906 S.W.2d 685 (1995), where this court stated, "If a record of trial is insufficient to permit a full review of the proceedings from which an appeal has been taken, we have no alternative but to reverse and order a new trial." Scott also cites *Jacobs v. State*, 327 Ark. 498, 503, 939 S.W.2d 824 (1997), where we stated that in a case involving a sentence of life without parole, "[o]ur rules require us to examine the record for all errors prejudicial to the defendant . . . ." We note that in *Ward*, that there were numerous errors in the transcript, misidentified speakers, bench conferences that were not reported, and an unsuccessful attempt to settle the record. In *Jacobs*, the court reporter's tapes and records were vandalized and made useless. Also in *Jacobs,* an attempt was made to reconstruct or settle the record under Ark. R. App. P. — Civ. 6; however, the attempt was unsuccessful. Thus, in both *Ward* and *Jacobs*, significant and critical portions of the record were missing. *McGehee v. State*, 328 Ark. 404, 943 S.W.2d 585 (1997), is also relevant. In *McGehee,* the court reporter's tapes were missing. Transcripts of bench conferences and trial testimony were not in the record. Testimony was attributed to the wrong witnesses. The accuracy of transcriptions were disputed by counsel, and there were other errors. The prosecution agreed that the court reporter should not have certified the transcript. Again, in *McGehee,* there was an unsuccessful attempt to reconstruct the record. In *McGehee,* we stated:

> In *Holiday Ins., Inc. v. Drew*, 276 Ark. 390, 635 S.W.2d 252 (1982), we held that where there is virtually no record of the proceedings conducted out of the presence of the jury and where the record is inadequate for appellate review, the appellate court can do nothing other than remand for a new trial.

*McGehee,* 328 Ark. at 413. The responsibility of keeping a complete record lies with the trial court. *Bell v. State,* 296 Ark. 458, 757 S.W.2d 937 (1988).

We recently stated that while we agree that there is a preference for a complete record, a full and complete record is not necessarily required where the existing record is sufficient for us to perform a review for errors prejudicial to the rights of the appellant. *Lewis v. State,* 354 Ark. 359, 123 S.W.3d 891 (2003); Ark. Code Ann. § 16-91-113(a) (1987); Ark. S. Ct. R. 4-3(h) (2003). The notice of appeal filed by Scott on March 18, 1998, requested transcription of the "entire record, including all pretrial hearings, in chambers proceedings, jury selection, testimony and exhibits, and every and all other matters presented in the trial of this matter." We note that in *Howell v. State,* 350 Ark. 47, 84 S.W.3d 442 (2002) the appellant requested the entire record but the record provided did not include *voir dire* and jury selection. In *Howell,* we stated:

> In addition, pursuant to Supreme Court Rule 4-3(h) (2002), when the sentence is death or life imprisonment, the Court must review all errors prejudicial to the appellant in accordance with Ark. Code Ann. § 16-91-113(a). . . . Although the Attorney General made such certification in this case, a complete review is impossible to make without a true and complete transcript of the record.

*Howell,* 350 Ark. at 48. There is no question that prejudicial errors may occur during jury selection and *voir dire.* Therefore, this court had to review that portion of the record. In the present case, Scott complains that this court was deprived of the opportunity to review hearings on arraignment, bond for release, a September 13, 1996 hearing, an *ex parte* hearing on February 28, 1997, and an additional unidentified *ex parte* hearing.

We first consider Scott's arguments regarding arraignment. Scott is correct that the docket does not reflect that a formal arraignment took place. Citing *Neal v. State,* 270 Ark. 442, 605 S.W.2d 421 (1980), Scott argues that in failing to assure that the arraignment hearing took place, counsel deprived Scott of the "critical due process requirement of arraignment," and that thereby the judgment is rendered void and open to collateral attack in a Rule 37 proceeding. The lack of a record of arraignment is not

discussed in *Neal. Neal* does stand for the proposition that a Rule 37 petition may raise questions that might have been raised on direct appeal where they "are so fundamental as to render the judgment void and open to collateral attack." *Neal*, 270 Ark. at 447. Rule 37 is a narrow remedy designed to prevent wrongful incarceration under a sentence so flawed as to be void. *Nooner v. State*, 339 Ark. 253, 4 S.W.3d 497 (1999). Scott has not showed that he was prejudiced in any way by a lack of a record on arraignment.

From the record it is not possible to determine whether a formal arraignment took place. Arraignment is the reading of the indictment to the criminal defendant and asking for a plea of guilty or not guilty to the charge. *Nance v. State*, 323 Ark. 583, 602, 918 S.W.2d 114 (1996); Ark. Code Ann. § 16-91-113(a) (1987). Scott appears to be arguing that his due process rights were violated by a lack of a prompt first appearance in an arraignment hearing. In Arkansas, a criminal defendant's right to a prompt first appearance and determination of whether he or she may be restrained in custody is handled by a probable cause hearing. *Nance, supra*; Ark. R. Crim. P. 8.1 (2003). Further, where a criminal defendant is tried on a plea of not guilty without objection, the right created under the statutes to arraignment is waived. *Ellingburg v. State*, 254 Ark. 199, 492 S.W.2d 904 (1973); *Hill v. State*, 251 Ark. 370, 472 S.W.2d 722 (1971); *Clubb v. State*, 230 Ark. 688, 326 S.W.2d 816 (1959). The issue of arraignment is moot.

We next consider Scott's argument regarding the failure to assure that the bond hearings were recorded and included in the record. Scott was convicted, and his conviction was affirmed. Therefore, any issues arising from errors relating to pretrial release and bond are moot. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002); *Shields v. State*, 348 Ark. 7, 70 S.W.3d 392 (2002). This court does not decide moot issues. *See K.S. v. State*, 343 Ark. 59, 31 S.W.3d 849 (2000).

Next we consider the September 13, 1996, docket entry. Scott asserts that this docket entry refers to a hearing that was not reported. We also note that Scott asserts error in failing to assure his presence at the September 13, 1996 hearing. According to the trial court, the notation in the docket on September 13, 1996 to a continuance is not a reference to a hearing, but rather is

a ministerial notation in the docket that the case was continued. The trial court stated that there was no hearing on September 13, 1996 to be recorded. Thus, there is no merit to this issue.

 We now consider Scott's argument of error in holding *ex parte* hearings that were neither attended by his counsel nor recorded. On this issue, Scott refers this court to page 90 in the record where we find argument by Scott's counsel:

> The docket reflects that on February 28th of '97, it appears that Judge Yates, without a hearing or without my being present or my client, signed in the docket that the case was continued pending a mental exam. Well, the problem with that, is that your honor clearly indicated that the order should be sent immediately to the hospital, that Mr. Scott should be examined immediately within that 30 day period, but he was not.

The docket for February 28, 1997, states, "Cont. pending mental exam." The docket on January 21, 1997, correctly records that on that date Scott moved for and was granted a mental examination. Once a mental exam is ordered, the case is continued. Ark. Code Ann. § 5-2-305(a)(1) (Supp. 2003); Ark. R. Crim. P. 28.3(a) (2003). The notation on the docket on February 28, 1997, merely notes this. Scott makes no argument that anything occurred on February 28, 1997, other than a notation that the case was continued, which it was. There is no merit to this claim. Scott makes no specific argument regarding the other unidentified *ex parte* hearing he alleges took place. There is nothing for this court to consider. Scott must show that he suffered prejudice. Scott fails to develop the argument, therefore; the issue will not be considered. *Weatherford v. State*, 352 Ark. 324, 101 S.W.3d 227 (2003).

 Finally, we consider the assertion by Scott that at the March 25, 1996, hearing it was determined that "crucial paperwork was missing from the court's file and that charges may not have been filed against the Appellant." The record and docket reflect that the criminal information was filed on March 7, 1996. There is no merit to this claim.

*Witnesses*

Scott alleges that his counsel met with his girlfriend Louvenia Sanders before trial, and that at that meeting Sanders indicated that she "didn't believe Ricky could do something like that . . ." He alleges that later at trial, Sanders testified that she did not remember indicating that to Scott's attorney. Scott argues his counsel was ineffective for failing to obtain a statement from Sanders exculpating him when counsel met with Sanders in his office. At best, Sander's alleged statement is evidence of character. The testimony does not exculpate Scott, but rather is a statement that Sanders was of the opinion that Scott would not kill someone. It is not even a statement against interest that tends to exonerate Scott. *Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001). We also note that even if a statement by Sanders would have been helpful, there is no offer of proof that Sanders would have signed a statement. There is no merit to this issue.

Scott also alleges ineffective assistance of counsel in failing to call subpoenaed witnesses Jean Scott, Larry Maggit, and Tommy Haskins. Scott alleges that at least one witness could have provided an alibi. Scott provides no convincing argument. We need not address the issue. *Wooten v. State,* 351 Ark. 241, 91 S.W.3d 63 (2002). We are merely referred to the affidavits attached to the petition for post-conviction relief.

However, even if we consider the testimony that would have been offered, there is no merit to the issue. Jean Scott would have testified that she was in her kitchen at the time Smith was killed, and that she heard five to six shots. Larry Maggit would have testified that Scott was with him riding around until dark on the day of the murder. Tommy Haskins would have testified that Scott came to his house at dusk on the day Smith was killed and that he seemed normal. Attorney Wilson, who represented Scott at trial, testified at the Rule 37 hearing that he spoke with the witnesses, discussed trial strategy with Scott, and did not call the witnesses. Trial strategy is not a basis for post-conviction relief. *Wooten, supra.* We also note that multiple witnesses placed Scott at the scene and identified Scott as the killer.

Scott next argues that there was no record of a shell casing introduced at trial "ever being found." It appears Scott is making some sort of foundational argument or an argument that a

proper chain of custody was not shown. There is not a single cite to authority in Scott's argument on this point. We have frequently stated that we will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Weatherford, supra.*

*Mistrial*

 Scott argues that his counsel was ineffective for failure to move for a mistrial when Sanders testified that Scott raped her daughter. Scott notes that his attorney objected, and the jury was instructed to ignore the statement. Scott argues that the admonition to the jury was insufficient to negate the prejudice. An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Hamilton v. State*, 348 Ark. 532, 74 S.W.3d 615 (2002). We cannot say that the statement in this case by a witness was so patently inflammatory that justice could not be served by continuing the trial. *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003).

Affirmed.

ARNOLD, CJ., not participating.