Cite as 2025 Ark. App. 112

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CR-24-99

| | |
|---|---|
| ANTHONY PETTIES<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered February 26, 2025<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NOS. 66FCR-22-1027 & 66FCR-22-1028]<br><br>HONORABLE R. GUNNER DELAY, JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

A Sebastian County jury convicted appellant Anthony Petties of two counts of delivery of methamphetamine for which he was sentenced as a habitual offender to an aggregate term of thirty years' imprisonment. On appeal, Petties argues that trial counsel's concession of his guilt, in the absence of a clear record of his consent to this trial strategy, violated article 2, section 10 of the Arkansas Constitution and that we should review the issue as a plain error under the third exception in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). We find no error and affirm Petties's convictions.

### I. *Background*

On July 12 and 13, 2022, Petties sold five grams, and then thirteen grams, of methamphetamine to a confidential informant (CI) working for the Fort Smith Police

Department. He was charged with two counts of delivering methamphetamine, and the case proceeded to a jury trial. In his opening statement, trial counsel said,

> Ladies and gentlemen of the jury, sometimes we are all thrown curveballs[,] and here is mine. I prepared one thing to say, but I am going to say something else this morning.
>
> My client is an addict[,] and he sells drugs to support his habit[,] and he did these two things that the State has accused him of. The State is going to be able to prove to y'all beyond a reasonable doubt in this case because they have evidence[,] and they have good evidence. You will hear from the officers in this case who conducted the surveillance. You will hear from [a confidential informant] who is also an addict, who has priors, who is trying to work her case off in order[—]or had to go after other people in order[—]to help her case.
>
> You are going to hear from my client who is going to testify that he did these two deliveries. You are going to hear from his sister in sentencing on how he is different than when he went into [the] military and served our country and how he came out.
>
> This is a story, ladies and gentlemen, of addiction. This isn't a story of the war on drugs. This isn't a story about going after people here, just cold hearted drug dealers; that is not what this is.
>
> You will hear the evidence in this case[,] and I think you are going to come to the same conclusion and that we are really going to be arguing about sentencing in this case. Thank you.

The State then presented testimony from several law enforcement officers involved with the two transactions that occurred over two days in July. The State also introduced audio and video recordings of the transactions. The CI testified and identified Petties as the person who sold drugs to her. Chemists from the Arkansas State Crime Laboratory confirmed that the substance submitted for testing was methamphetamine, and they testified about the weight of each sample. In moving for a directed verdict, trial counsel said,

Your Honor, at the close of the State's case, as the Court is well aware, after I consulted with my client this morning and I told the jury that my client committed both offenses, this would be about sentencing.

Petties did not ultimately testify and did not put on any evidence. In his closing argument, trial counsel said the following:

I appreciate my client for letting me handle this the way it needs to be handled. I told you at the beginning that he committed two acts of delivery. So, you are going to go back[,] and you will read the instructions[,] and you will get the verdict forms. You will go back there and check that he is guilty of both of these offenses.

The jury found Petties guilty of both counts of delivery of methamphetamine. During sentencing, the State introduced Petties's seventeen prior felony convictions and presented testimony from several law enforcement officers. Petties's trial counsel presented the testimony of his sister, who pleaded for her "baby brother" to be given "the opportunity to live life" and "to do right." The jury sentenced Petties to concurrent terms of imprisonment of ten years for the Class B felony and thirty years for the Class Y felony. Appellate counsel filed a timely notice of appeal.

## II. *Discussion*

Petties argues that the trial court had a duty to intervene when trial counsel admitted in his opening statement that Petties was guilty of the offenses with which he was charged without inquiring whether Petties consented to that trial strategy. Petties asserts that such inaction by the trial court violated article 2, section 10 of the Arkansas Constitution, which provides that

[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed;

3

provided, that the venue may be changed to any other county of the judicial district in which the indictment is found, upon the application of the accused, in such manner as now is, or may be prescribed by law; and to be informed of the nature and cause of the accusation against him, and to have a copy thereof; and to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to be heard by himself and his counsel.

Ark. Const. art. 2, § 10.

Petties, however, raised no objection when trial counsel made this concession at Petties's jury trial. To preserve an issue for appeal, a defendant must object at the first opportunity. *Hill v. State*, 2024 Ark. App. 613. Issues raised for the first time on appeal, even constitutional ones, generally will not be considered. *Id.* Petties argues that the trial court should have intervened and declared a mistrial or, at the very least, inquired into whether he consented to the strategy of conceding guilt. He submits that the trial court's failure to intervene exempts this error from the contemporaneous-objection rule and allows for review under the third *Wicks* exception.

In *Wicks*, the supreme court recognized four exceptions to the contemporaneous-objection rule. The third exception, on which Petties relies, concerns issues for which the trial court has a "duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial." *Wicks*, 270 Ark. at 786, 606 S.W.2d at 369. This exception, however, "is limited to only those errors affecting the very structure of the criminal trial, such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof." *Edwards v. State*, 2024 Ark. App. 431, at 10 (quoting *White v. State*, 2012 Ark. 221, at 10, 408 S.W.3d 720, 726). Moreover, *Wicks*

exceptions to the contemporaneous-objection rule are "rarely applied." *Chunestudy v. State*, 2012 Ark. 222, at 10, 408 S.W.3d 55, 62 (quoting *Anderson v. State*, 353 Ark. 384, 398, 108 S.W.3d 592, 600–01 (2003)).

Petties cites *McCoy v. Louisiana*, 584 U.S. 414 (2018), in which the United States Supreme Court held that "[v]iolation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called 'structural.'" 584 U.S. at 427. In *McCoy*, trial counsel conceded that McCoy murdered his estranged wife's mother, stepfather, and son, even though McCoy "adamantly objected to any admission of guilt" and "vociferously insisted" that he did not commit the murders. *Id.* at 417. Trial counsel knew of McCoy's "complete opposition" to the trial strategy and had been instructed to "pursue acquittal." *Id.* at 419. McCoy sought to terminate trial counsel's representation at a pretrial hearing, but the trial court refused to relieve him. In his opening statement during the guilt phase, trial counsel told the jury that once it heard the State's evidence, there was "no way reasonably possible" that it could reach any other conclusion than McCoy had caused the deaths of his family. *Id.* at 419. McCoy said out of earshot of the jury that trial counsel was "selling [him] out." *Id.* at 419. McCoy testified that he was innocent and attempted to present an alibi defense, but in trial counsel's closing argument, he said that McCoy was the killer. During the penalty phase after McCoy had been found guilty, trial counsel again said that McCoy had committed the murders but asked for mercy.

Represented by new counsel, McCoy moved for a new trial, arguing that the trial court had violated his constitutional rights by allowing his prior trial counsel to concede his

guilt over his objection. The motion was denied. McCoy appealed, and the Louisiana Supreme Court affirmed the trial court's ruling that McCoy's trial counsel had the authority to concede his client's guilt. Certiorari was granted. The United States Supreme Court reversed and remanded, holding in part that McCoy had the right under the Sixth Amendment to insist that his trial counsel refrain from admitting his guilt, even though counsel reasonably believed that this strategy afforded McCoy the best chance to avoid a death sentence. The United States Supreme Court said that, while trial management is the lawyer's province, some decisions are reserved for the client, which include the "autonomy to decide that the objective of the defense is to assert innocence." *Id.* at 422. McCoy's convictions were thus overturned, and he was given a new trial. *McCoy* distinguished *Florida v. Nixon*, 543 U.S. 175 (2004), which is another case cited and relied on by Petties.

The *McCoy* court pointed out that "Nixon's attorney did not negate Nixon's autonomy by overriding Nixon's desired defense objective, for Nixon never asserted any such objective." *McCoy*, 584 U.S. at 424. Also, Nixon complained about his trial counsel's admission of his guilt only after his trial had concluded. *Id.* at 424. Moreover, during his trial, Nixon was "generally unresponsive" when discussing trial strategy and "never verbally approved or protested" trial counsel's strategy of conceding guilt. *Id.* at 424.

Nixon was convicted of first-degree murder, kidnapping, robbery, and arson. His convictions were affirmed on direct appeal, and he petitioned for postconviction relief. The trial court denied the request without an evidentiary hearing. Nixon appealed and petitioned for a writ of habeas corpus. The Florida Supreme Court remanded for an evidentiary hearing

on his ineffective-assistance-of-counsel claim, specifically, whether Nixon had consented to counsel's strategy. The trial court again denied postconviction relief on finding that Nixon had consented through his behavior of passively receiving information, and Nixon appealed. The Florida Supreme Court reversed and remanded for a new trial, holding that Nixon's affirmative, explicit acceptance of counsel's strategy was required because counsel's statements to the jury were "the functional equivalent of a guilty plea." 543 U.S. at 188. Certiorari was granted. The United States Supreme Court reversed and remanded, holding that the Florida Supreme Court should have used the standard prescribed in *Strickland v. Washington*, 466 U.S. 668 (1984), which would have required Nixon to show that counsel's concession strategy was unreasonable. The United States Supreme Court noted that trial counsel's failure to obtain Nixon's express consent to a strategy of conceding guilt did not automatically render counsel's performance deficient and presumptively prejudicial. The United States Supreme Court said that "[w]hen counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent." 543 U.S. at 192.

Petties states that "this case is concededly more akin to that in *Nixon* than *McCoy*" and that "the record is largely silent on the question of whether Petties consented or objected, like *Nixon.*" Petties further concedes that trial counsel said on the morning of trial that the strategy of conceding guilt was discussed with him and later implied that he (Petties) had consented to that strategy. He argues, however, that statements of counsel are not

7

evidence. Petties argues that, given the fundamental importance of a criminal defendant's right to control the nature of his or her defense, we should hold that the Arkansas Constitution goes beyond what is required by *Nixon*, *supra*, and that a defendant's express consent must be obtained prior to a concession of guilt.

We note that *Nixon* and *McCoy* involved capital-murder trials in which the death penalty was imposed. Also, at issue in *McCoy* was the client's autonomy, while *Nixon* involved the issue of an attorney's competence. Petties concedes that his situation is more akin to the circumstances in *Nixon*. Unlike *McCoy*, this was not a structural error because trial counsel did not override Petties's autonomy; rather, as in *Nixon*, there is no indication that Petties disagreed with, or objected to, trial counsel's strategy.[1] Indeed, trial counsel said that he consulted with Petties about the strategy and implied that Petties was in agreement with the trial strategy of conceding guilt, saying that he appreciated that his client was allowing him to handle the case the way it needed to be handled.

The third *Wicks* exception does not apply. Without a contemporaneous objection, Petties's argument is not preserved. Furthermore, beyond simply asserting "the fundamental importance of a criminal defendant's right to control the nature of his or her defense," Petties does not cite any authority or make any convincing argument to support his more expansive interpretation of article 2, section 10 of the Arkansas Constitution. *See Weatherford v. State*, 352 Ark. 324, 101 S.W.3d 227 (2003).

---

[1]Petties does not argue on appeal that trial counsel did not consult him about the strategy of conceding guilt or that he did not consent to trial counsel's strategy.

8

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*The James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.